# BARNARD-CURTISS COMPANY v. MINNEAPOLIS DREDGING COMPANY.[1]

June 25, 1937.

No. 31,151.

*Koon, Whelan, Hempstead & Davis,* for appellant.
*Donald O. Wright,* for respondent.

STONE, JUSTICE.

In this action for breach of contract plaintiff had a verdict. After denial of its motion for a new trial, defendant appeals from the judgment.

Defendant had a contract with the United States wherein it agreed to widen, deepen, and align the banks of the Wolf River near Memphis, Tennessee. The contract called for the building of earthen

[1]Reported in 274 N. W. 229.

dikes and the clearing and grubbing of trees, stumps, and underbrush in designated areas. November 23, 1933, under a subcontract with defendant, plaintiff took over part of the work, undertaking the following:

1. To furnish all materials and perform all work necessary to complete the excavation of a minimum quantity of 100,000 cubic yards of earth for the building of dikes in accordance with certain specifications, defendant agreeing to pay therefor at the rate of 15 cents per cubic yard, except for the excess over 100,000 cubic yards, which was to be paid for at 12 cents per cubic yard.

2. To clear and grub 30.70 acres in the area "ahead of the dredge" (river area) for the sum of $200 per acre.

3. To clear and grub:

(a) 21.39 acres in Sec. 1 of the Main levee, at the rate of $153 per acre.

(b) 33.12 acres in Sec. 2 of the Main levee, at the rate of $95 per acre.

(c) 29.67 acres in Sec. 3 of the Main levee, at the rate of $138 per acre.

4. A "tolerance or variance of three acres, more or less" was "permitted in the acreage included" in paragraph 2, and in the "total acreage included in paragraph 3."

Contract payments were to be made as the work progressed "at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the parties," and in making such partial payments "there shall be retained ten per cent on the estimated amount until final completion and acceptance of all work." In pursuance thereof, defendant made and plaintiff accepted three payments totaling $32,468.64. Defendant now claims that such payments were all that was earned by plaintiff.

There was evidence for plaintiff that under paragraph 1 of the contract it excavated 134,120 cubic yards but was paid only for 104,082 yards; that under paragraph 2 it cleared and grubbed 36.1 but was paid for only 27.70 acres; that under paragraph 3(a) it cleared and grubbed 34.39 but was paid for only 22.39 acres; under

(b) it cleared and grubbed 19 and should have been paid for 30.12; under (c) it cleared and grubbed 32.6 and was paid for only 28.67 acres. For all the work under paragraph 3 plaintiff claims that defendant owes $2,188.34. The complaint also set up other bases for recovery, and there were counterclaims, not now material.

The issues were submitted to the jury, which returned a general verdict in plaintiff's favor in the sum of $6,983.07. There was also a special verdict, to be considered later. Appellant assigns as error (1) the admission of certain exhibits over objection; (2) an instruction concerning the "tolerance" clause; and (3) error by the jury in computing the total amount due plaintiff. We but mention another point for defendant based upon a supposed error of plaintiff's evidence, followed by the jury. The error is in the reproduction in the record of plaintiff's exhibit containing the field notes concerning, and the resulting measurements of, the areas cleared and grubbed. There is negligence apparent in the placement of the decimal point in some of the extensions. But it is of no avail to defendant because the totals, in square feet and then in acres, are correctly computed.

■ Error is predicated on the admission of a record kept by plaintiff in the field for the purpose of computing the cubic yards of earth in the dikes. Its only original entries are of the center height of the dikes at each station. There is little, in this case, to the argument that that is not enough. Will Schutz and Oscar Strickland, who succeeded Schutz, both qualified engineers in plaintiff's employ, testified that the notes were in their handwriting, were accurate, and contained sufficient data for a correct computation.

The excavated dirt made the dikes. They were in the form of an inverted "V," parallel and from 300 to 500 feet apart. Between them was pumped mud and river silt to form a levee. The purpose of the dikes was to hold the filling in place until dry. By gravity alone the dikes made their own slope. Expert testimony on both sides fixes that "angle of repose," which was uniform, at "one and one-half to one." So the width of the embankment at its base, from center to outside edge or "toe" of the slope, was uniformly

one and one-half times the height at the center. The cubic yards of embankment were computed by taking the areas of the triangular cross-section at every 100 feet (or station), and calculating the contents of each intervening prism. Hence the center height of the fill at each station, properly recorded in the field notes, indicates also the base, and the two, with the length of the prism, are the only measurements necessary from which to reckon its cubic contents. There was no error in the admission of the exhibit.

■ Assigned as error is the court's construction of the "tolerance" clause in its application to paragraphs 2 and 3. With reference to paragraph 2, the court gave the following instruction:

"Now, with respect to the grubbing and clearing ahead of the dredge the parties provided in their contract that there should be what they have designated as a tolerance of 3 acres more or less than 30 acres. The court is construing that to mean that if—this is only for illustration—28 acres were cleared, that the plaintiff would be entitled to pay for 30 acres, and that if 32 acres were cleared, he would still only be entitled to pay for 30, but if less than 27 acres were cleared the defendant would be entitled to a deduction. If more than 33 acres were in fact cleared, then plaintiff would be entitled to compensation at the rate of $200 per acre for the amount exceeding 33 acres * * *."

The court also instructed that it was not applicable to paragraph 3.

Counsel cannot agree with each other or the court as to the construction of the "tolerance clause." Plaintiff had one theory below and defendant another. The court adopted neither, but took the view indicated by the above excerpt from the charge. Fortunately for us, we are relieved from the necessity of making any choice from this plethora of theory. For us it is enough that, in application to the facts, the trial judge's theory resulted in an allowance, in the verdict, of a sum *less* than plaintiff would have got had judge and jury applied *defendant's* theory of "tolerance." Hence, under familiar law, defendant has cause for thanksgiving rather than complaint in the rejection of its own theory and the adoption, by

the court, of one more favorable to it. Giliuson, Ellingsen & Erickson, Inc. v. Priest, 171 Minn. 25, 213 N. W. 47.

By its special verdict the jury found the acreage cleared and grubbed by plaintiff in the four contract areas, that ahead of the dredge or "river area" and those in sections 1, 2, and 3 of the main levee. As to area, the special verdict is final and not questioned by defendant. It is in application to the areas so fixed, and now determinative, that the court's theory of tolerance worked more favorably to defendant than its own. By that rejection of its own theory defendant was saved $275.56. That is the result. The details need no statement. They are in the record and briefs.

■ In computing the amount of its general verdict the jury made a mistake in subtracting the amount defendant had paid from that determined by it to be due plaintiff. The amount paid was $32,468.64. The sum to which plaintiff was entitled under the special verdict was $38,736.35. The difference is $6,267.71. Yet the general verdict was for $6,983.07. This excess was clearly due to mere error in computation which the trial court can and should correct. 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 9829. With commendable candor, counsel for plaintiff concede the error just as claimed for defendant. The order denying a new trial was expressly without prejudice to defendant's right later to move for a modification of the verdict. Too, the point may have been made below. Anyway, the trial court is the tribunal wherein to correct such mistakes. The correction will not be made here, but this decision is without prejudice to, and should insure prompt rectification of, the verdict, as to amount, after the case is remanded.

Defendant, first raising the question here, contends that plaintiff is "estopped" because of its acceptance, without objection, of three payments made by defendant and accompanied by estimates each time of the work then done and the amount due. In a case of this nature, such an issue will not be considered on appeal if it was not properly presented to the trial court.

Judgment affirmed.