ALLAN BOOTH v. HERBERT SPINDLER, SOLE TRADER d.b.a. HERB SPINDLER COMPANY, AND ANOTHER.

110 N. W. (2d) 889.

September 15, 1961—No. 37,869.

80

*Stein & Stein* and *David Naughtin,* for appellant.
*Gannon & Dahle,* for respondent Ventoura Corporation.
*Bouschor & McNulty,* for respondent Spindler.

OTIS, JUSTICE.

The appellant, Allan Booth, instituted this action against respondents, Herbert Spindler and Ventoura Corporation, to rescind a contract for the purchase of a house trailer, alleging a breach of implied warranty of fitness by reason of excessive condensation experienced in the use of the equipment. The defendant Spindler counterclaimed for the cost of the installation and cross-claimed against defendant Ventoura Corporation for indemnity. At the conclusion of the trial, special interrogatories and general verdicts were submitted to the jury, who in the first instance returned them as follows:

*Interrogatory No. 1.* "If you find a breach of warranty, what was this defect in the construction and manufacture of said trailer?

"Answer: None."

*Interrogatory No. 2.* "Was there condensation in this trailer so as to make it unsuitable or unfit as a residence for which said condensation either or both defendants are responsible?

"Answer: Yes."

*Verdict.* "We, The Jury in the above entitled action, find the plaintiff entitled to rescission of contract and to recover of the defendant Spindler Company the sum of Three Thousand Five Hundred Three Dollars and 60 cents, ($3,503.60) and we further find a verdict in favor of the defendant Ventoura Corporation."

*Verdict.* "We, the jury in the above entitled action, find a verdict in favor of the plaintiff as against defendant Spindler Company's counterclaim."

*Verdict.* "We, the jury in the above entitled action, find a Verdict in favor of the defendant Ventoura Corporation as against the cross-complaint of defendant Spindler Company."

Because the interrogatories were inconsistent with one another, and interrogatory number one was inconsistent with the verdict in plaintiff's favor, the court refused to accept the jury's decisions and, in the absence of counsel and the court reporter, directed them to retire and continue their deliberations to reconcile their findings with the verdicts. Thereafter the jury again returned and amplified their answer to interrogatory number one thus:

*Interrogatory No. 1.* "If you find a breach of warranty, what was this defect in the construction and manufacture of said trailer?

"Answer: None."

"The Herb. Spindler Co. did not furnish competent reliable information and instruction to the plaintiff as to proper usage of the ventilation system which caused condensation."

Pursuant to Rule 49.02 of Rules of Civil Procedure, the trial court on the basis of the answer to interrogatory number one ordered

judgment in favor of Spindler, notwithstanding the verdict in favor of plaintiff. From that order and from an order denying plaintiff's motion for judgment against Spindler in the sum of $4,883.90 or in the alternative for a new trial against both defendants, plaintiff appeals.

This is the second action to reach us in which a claim of breach of warranty has been asserted against these defendants arising out of the sale of a house trailer.[1]

On October 16, 1956, the plaintiff, Allan Booth, purchased from defendant Spindler, who was a retail dealer, a 1957 model 48-foot Travelaire mobile home or house trailer manufactured by defendant Ventoura Corporation. It is not clear from the record what the precise terms were, but the conditional sale contract recites an initial payment of $2,172.11 and a time balance of $8,562.60, payable in 60 monthly installments of $142.71, including insurance. Of the $2,172.11, the sum of $1,550 represented furniture transferred by plaintiff to Spindler to be credited on the purchase price. By October 1958 when the trailer was repossessed, plaintiff claims he had made additional payments in excess of $2,700.

It appears that Mr. and Mrs. Booth secured delivery of the house trailer in November 1956 and they testified that almost immediately they experienced condensation in such great quantities that the trailer became virtually uninhabitable. Within a few weeks they corresponded with Ventoura Corporation, registering their complaints, and in February 1957 a new furnace was installed in an attempt to correct their difficulties. Other adjustments and repairs were made throughout the spring and summer and according to plaintiff, conditions worsened in the winter of 1957-1958. Finally in July of 1958 the plaintiff served a notice of rescission on both defendants and suspended payments, resulting in the repossession of the trailer by the defendant Spindler in October 1958.

According to the testimony of plaintiff and his witnesses, the excessive moisture in the trailer resulted in water literally soaking the walls, floors, and furniture, seriously damaging the trailer itself and its con-

---

[1]Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Id. 256 Minn. 565, 99 N. W. (2d) 684.

tents, and causing the occupants almost unbearable discomfort. The action was sued on the theory that there was an implied warranty of fitness for the climatic conditions existing in the Grand Rapids area, and that as a result of a breach of warranty there was condensation of moisture to such a degree that a rescission was justified. The plaintiff's complaint attributes the condensation to inadequate insulation, and it was on this theory that the matter went to trial.

The jury's findings appear from the record to be amply supported. There is no question but that condensation occurred, and it is equally clear that the reason for it was the plaintiff's inadequate understanding and improper use of the ventilating system, notwithstanding the information on the subject furnished the Booths by defendants.

There was voluminous expert testimony on behalf of defendants to the effect that a trailer of the size and dimensions here involved generates great quantities of condensation through cooking, bathing, heating, and the normal physical activities of its occupants. The president of the Ventoura Corporation described in detail the measures taken in the construction of the trailer to provide ample ventilating facilities so as to permit moist air to escape and dry air to circulate. He testified that through the proper use of these vents, even in cold weather, sufficient pressure from within permitted the moist air to escape, without cold outside air being blown in through the vents under normal circumstances. There was testimony that a booklet entitled "Mobile Home Care and Upkeep," which was introduced in evidence, had been furnished plaintiff, describing the problem of moisture generated by normal living in a trailer and explaining, among other things, as follows:

"* * * It is quite obvious that closing the coach tight, permitting no moisture to escape continually adds moisture to the air. It is absolutely necessary to have one roof ventilator partially opened together with one window."

One of defendants' experts who examined the trailer stated that there were two free air ventilators at the apex of the trailer in the roof; two power vents, one over the stove and the other over the shower room; five vents along each of the longitudinal walls of the trailer; and vent windows on either side of the picture windows. Defendant Spindler

stated that in response to plaintiff's complaints and in order to correct the condensation, one of his employees advised the plaintiff's wife to leave the drapes open to allow circulation, to which she demurred. The president of Ventoura Corporation testified that if the ventilating system had been properly used the air in the trailer would have been completely replaced every 28 minutes. Plaintiff and his wife demonstrated their lack of understanding of the condensation problem by their testimony both at the trial and in a pretrial deposition. At the taking of the deposition Mrs. Booth stated:

"A  * * * We taped just everything around the doors and everything else to keep the moisture from coming in.  * * *

*   *   *   *   *

"A  We put plastic around and tape on all the framework because the moisture come through so bad on the framework.

*   *   *   *   *

"Q  [by Mr. McNulty, counsel for defendant Spindler] In other words, it was your idea the moisture was coming into the trailer from the outside?

"A  Yes."

At the trial, Mrs. Booth gave the following testimony:

"Q  [by Mr. Dahle, counsel for defendant Ventoura Corporation] Which windows were taped on the inside? Which two?

"A  Well, I don't know if it was two. It was several different windows we had gone through the house and just put tape around the frame, the aluminum part, to see if it would help hold the moisture out."

"Q  [by Mr. McNulty] Please answer my questions. How many were taped on both the inside and outside?

"A  Maybe about three of them. On the outside, there were more, but on the inside, we just put the tape around to try it.

"Q  And that was done to keep the moisture from coming in from the outside and causing—

"A  For our experiment to think that would probably stop the moisture from coming through the aluminum so quick."

In short, the testimony is clear that plaintiff and his wife were laboring under the misapprehension that their moisture problem was created by outside air getting in, and they sealed the coach in every conceivable manner to prevent cold air circulating. In so doing they prevented any of the moisture-laden air from escaping and either caused frost when the temperature went down, which subsequently melted, or simply condensation on contact with any cold object.

■ It is plaintiff's contention that the court improperly submitted to the jury interrogatory number one, requiring the jury to specify the defect in construction and manufacture if a breach of warranty existed. He takes the position that where an article is not suitable for the purpose intended, the purchaser is under no obligation to prove the specific defects in design and construction, but has only the burden of showing that it does not function for the purpose intended.[2] For this proposi-

---

[2]Minn. St. 512.15 provides in part: "Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Section 512.69 provides in part:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election:

\*　　\*　　\*　　\*　　\*

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

\*　　\*　　\*　　\*　　\*

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price."

tion plaintiff finds support in Juvland v. Wood Brothers Thresher Co. 212 Minn. 310, 314, 3 N. W. (2d) 772, 774. However, plaintiff created this issue in his complaint by specifying that the defect consisted of inadequate insulation, and took no exception to the court's charging the jury that this, among other things, was his claim. The court did not otherwise in its charge require the jury to determine the specific defect which caused the condensation, but correctly instructed them that plaintiff need only show that the trailer was not reasonably fit for use under conditions which would normally be encountered in the Grand Rapids area.

While the interrogatory in question called for facts which the plaintiff was not required to prove, the answer given demonstrates the efficacy of using interrogatories as a matter of principle to test the validity of a general verdict.[3] It would have been better if the interrogatory had asked the jury whether the condition encountered by plaintiff was due to a defect in the trailer or whether it stemmed from improper use, without directing them to specify the particular defect. Presumably, however, if the jury had been unable to account for the condensation they would have said so. Since they found there was no defect, we do not believe that under the circumstances plaintiff has been prejudiced. While it might have been reversible error to impose on plaintiff the burden of proving a specific defect as a prerequisite to recovery, we hold that under the pleadings and the charge, and in conjunction with the other interrogatory and general verdicts, the error was harmless, since the jury found that the difficulties plaintiff encountered were entirely attributable to improper use of the ventilating system and not to construction and manufacture.

■ Plaintiff assigns as error the court's action in resubmitting the interrogatories and verdicts to the jury rather than granting a new trial. Rule 49.02 of Rules of Civil Procedure provides as follows with respect to interrogatories:

---

[3]Roske v. Ilykanyics, 232 Minn. 383, 392, 45 N. W. (2d) 769, 775; Walker v. New Mexico & S. P. R. Co. 165 U. S. 593, 598, 17 S. Ct. 421, 422, 41 L. ed. 837, 842; State, by Lord, v. LaBarre, 255 Minn. 309, 314, 96 N. W. (2d) 642, 646.

"* * * When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment, but may return the jury for further consideration of its answers and verdict, or may order a new trial."

Clearly the answer to interrogatory number one that there was no defect was inconsistent with the answer to interrogatory number two which found either or both defendants to be responsible for the condensation. It was equally inconsistent with the general verdict finding plaintiff entitled to rescind and assessing damages against defendant Spindler. It was within the court's discretion to send the jury back for further consideration, and as matters developed the court was justified in directing the jury to attempt to reconcile its decisions rather than in subjecting the parties and the court to the expense and trouble of a new trial.

When the jury returned the second time, amplifying their answer to interrogatory number one, it was apparent that the basis for their general verdict was wholly unsound and could not be permitted to stand, since the question of whether defendant Spindler was negligent in failing to furnish plaintiff with adequate ventilating instructions was neither pleaded nor litigated. We hold that there was no abuse of discretion in requiring the jury to continue its deliberations in an attempt to reconcile its answers to the interrogatories with its general verdict.

■ It is asserted by plaintiff as a ground for reversal that the court gave directions to the jury without having a court reporter present to record the proceedings. Although the attorneys were also absent, it is conceded that they waived their right to be on hand when the jury returned. Our statute provides that it shall be the reporter's duty to record verbatim the charge to the jury. Minn. St. 486.02. The court is authorized under our law to require a jury to reconsider if it returns a defective or insufficient verdict. § 546.16. Whether or not the court's direction to resume deliberations is technically a charge to the jury, it is improper for the court to address the jury under such circumstances without the presence of a court reporter, and this is particularly true where counsel are not in the courtroom. The mischief lies in opening the door to a misconstruction and a faulty recollection of what the court

actually said, leaving the record uncertain as to the scope of his remarks. Although it was error for the court to proceed in this manner, we do not deem it sufficiently serious to require a new trial. There is no dispute about the tenor of the court's admonition. He gave no instructions with respect to the substantive rules of law that governed the jury's decision. The remarks were made in the courtroom, and when all of the jurors were present. The situation is to be distinguished from cases where a judge comments on questions of fact in the presence of the jury at the scene of an offense in a criminal matter without a reporter,[4] or where the court instructs the foreman by telephone while neither he nor the other jurors are in the courtroom.[5] The only question is whether the plaintiff was materially prejudiced and deprived of a fair trial.[6] We hold that under the circumstances no prejudicial error occurred in addressing the jury without counsel or the court reporter being present.

Affirmed.

---

[4]State v. Clow, 215 Minn. 380, 10 N. W. (2d) 359.
[5]Cronquist v. City of Minneapolis, 258 Minn. 30, 102 N. W. (2d) 512.
[6]Minn. St. 547.01 (1).