JAMES E. RAMFJORD, INDIVIDUALLY AND AS FATHER AND NATURAL GUARDIAN OF JAMIE RAMFJORD, A MINOR, v. JOSEPH WILLIAM SULLIVAN.

222 N. W. 2d 541.

September 20, 1974—No. 44300.

*MacDonald, Munger, Fillenworth & Bang* and *Harry L. Munger,* for appellant.

*Applequist, Donovan, Larson, Barnes, Mathias & Magie* and *Arnold W. Larson,* for respondent.

Heard before MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Plaintiff brought this action to recover damages for injuries to his minor daughter, for medical expenses incurred by him, and for loss of companionship of his daughter, arising out of an automobile-pedestrian accident wherein the minor was struck by an automobile driven by defendant. Following a jury trial, plaintiff moved for a new trial. From the denial of this motion plaintiff appeals. We reverse and remand for a new trial.

On the night of September 26, 1970, Jamie Ramfjord was struck by an automobile driven by defendant as he was driving west on Morris Thomas Road, a Duluth residential street which had no sidewalks. The accident occurred at approximately 9 p.m.

The parties admit in their briefs that there is sharp dispute in the record as to the details surrounding the accident.

In essence, defendant and three other witnesses testified that a group of approximately eight children were huddled in the street squarely in defendant's lane of traffic. Defendant decreased his speed as he approached these children and attempted to pull around them by moving into the lane of oncoming traffic. As soon as he pulled out, he observed an oncoming vehicle and thus was forced to turn back into his own lane to avoid a head-on collision. As he re-entered his lane, he struck Jamie Ramfjord with the right rear quarter panel of his automobile, knocking her to the ground.

The children denied being huddled in the street. They testified they were walking along the shoulder beside defendant's lane of traffic, facing defendant as he approached. They testified that they were strung out for one-quarter to one-half a block in

groups of two's and three's. They contradict defendant's testimony that he was swerving and one of the children testified that defendant struck plaintiff with the right front bumper of his automobile.

It is noteworthy that Jamie Ramfjord testified that she had one foot on the traveled portion of the roadway. This is corroborated by several other children in the group.

It is uncontested that Jamie Ramfjord sustained a fracture of the distal femur of her right leg as a result of the collision.

James Ramfjord filed suit against defendant as father and natural guardian of Jamie Ramfjord. Plaintiff contended that the injuries sustained by Jamie were caused by the negligence of defendant and sought to recover as damages:

(1) His medical expenses resulting from his daughter's injuries, plus damages for the loss of companionship of his daughter; and

(2) Damages on behalf of his daughter for her pain and suffering, past and future emotional distress, and past, present, and future physical disabilities.

Trial before a jury was had and the jury returned a verdict finding defendant 60-percent negligent and Jamie Ramfjord 40-percent negligent. Damages to Jamie Ramfjord were awarded in the amount of $5,000 and James Ramfjord was awarded the amount of his medical expenses. Judgment for plaintiff was ordered on December 5, 1972.

Thereafter, plaintiff filed a motion for new trial alleging the assignments of error which constitute the issues of the instant appeal. Hearing on this motion was held on December 28, 1972. On February 27, 1973, this motion was denied.

The issues raised on this appeal are:

(1) Did the trial court commit reversible error in refusing plaintiff's request for inclusion of Minn. St. 169.19, subd. 4, in the final charge to the jury?

(2) Did the trial court err in refusing to direct the verdict for plaintiff on the issue of negligence?

(3)   Is an award of $5,000 for damages sustained by a 14-year old girl inadequate and the result of passion, prejudice, or compromise by the jury?

(4)   Was reversible error committed during the testimony of a witness by the court's failure to properly admonish counsel for his tactics?

(5)   Does failure to have a court reporter present when the jury returns its verdict constitute reversible error in a case where the court then orders the jury to correct an answer to a special interrogatory?

■   At trial defendant on direct examination testified as follows: He saw the children in the street from a distance of two or three blocks. He continued towards them and eventually reduced his speed to about 10 miles per hour. The children "were right in [his] lane." Defendant went on to state:

"A.   So I slowed down, and the southbound lane was wide open, so I thought, 'Well, I will just crawl around them,' which I proceeded to do, and just then, when I'm around, oh, maybe the front of the car was around them, I noticed these lights coming right at me.

"Well, then I could see the car weaving over, and I felt that I was going to have a head-on collison, so I swung my car back then to the right back in my own lane, and when I did that, I heard a thud * * *."

Defendant further testified that he saw no children on the shoulder.

On cross-examination defendant stated that the oncoming car was "on top of me," and that that was the first time he saw this other automobile. He further testified that there were no obstructions to prevent his seeing the oncoming car prior to his turning into the other lane. The cross-examination then continued:

"Q.   And you didn't see the other car until it was right on top of you?

"A.   That's right.

"Q.   Was it because the children were blocking your view?

"A.   No, because I was watching the children.

*  *  *  *  *

"Q.   You don't claim the children were blocking your view then?

"A.   No."

Defendant testified that he was traveling at a speed of 5 to 10 miles per hour when he was going around the children. At that speed defendant stated he could have stopped in "maybe two or three feet." He did not sound his horn or blink his lights.

Defendant stated later in cross-examination that if he had seen the oncoming car prior to the time he got to the children, he could have stopped and would not have been forced to attempt to pass.

A view of the record thus supports the following conclusions: If we are to adopt this testimony as true, we must conclude that the children were in the street, defendant saw them in time to stop, and instead of stopping, he attempted to pass these children without first ascertaining if the way was clear even though he was not forced to make this attempt.

Plaintiff requested the court to include in its instructions Minn. St. 169.19, subd. 4, which provides:

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety, and then only after giving a clearly audible warning by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement."

The two cases cited by plaintiff are relevant; however, per-

haps more applicable is the case of Hagen v. Snow, 244 Minn. 101, 106, 69 N. W. 2d 100, 103 (1955), which states:

"It is well established that, 'as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made.' [Citations omitted.] Furthermore, 'even a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question.'" (Citations omitted.)

In the case at bar, § 169.14, subd. 4, appears applicable.

However, Hagen vests the trial court with a certain degree of discretion in this area. Thus, the following language from Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. 2d 793, 798 (1954), is pertinent:

"* * * All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient. Usually it is preferable to give a general charge, if practicable, upon the whole law of the case rather than to run the risk of overemphasizing one side of the case or confusing the jury as is often done by giving requested instructions or particularizing upon specific items."

Defendant notes that Minn. St. 169.21, subd. 3, was included in the instructions. This provision appears to cover generally the actions of defendant so as to convey to the jury a clear and correct understanding of the law.

Thus, while we believe plaintiff was entitled to the specific instruction requested, the court's instructions when viewed as a whole would not *standing alone* constitute reversible error.

■ On the issue of directed verdict, defendant's testimony

alone was very damaging to his case. However, there was *other* testimony, often conflicting, which the trial court in its discretion determined required the submission of this issue to the jury. This is a matter of discretion of the trial court which we will not reverse on appeal.

■ Plaintiff also contends that the damages awarded Jamie Ramfjord were the result of a compromise verdict and were inadequate. This is precisely the type of case in which this court has refused to second guess a jury. A trial court's denial of a new trial on grounds of inadequacy of damages is largely discretionary and will not be reversed on appeal unless this ruling is determined to be a clear abuse of that discretion. Boyce v. Herzberg, 296 Minn. 52, 206 N. W. 2d 548 (1973). We do not find such abuse here.

■ Plaintiff assigns as error the court's failure to admonish defense counsel in the presence of the jury for the following conduct.

During defendant's cross-examination of one of the police officers who investigated the accident the following exchange occurred:

"Q. You filled out a report from your notes, did you not, at the scene?

"A. Yes, sir, I did.

"Q. And you filled out certain questions, did you not?

"A. Yes, sir.

"Q. And did you fill out, in response to this, did you, a portion in the report where it says 'Beyond driver's control'—

"MR. MUNGER: Just a moment, Your Honor. That is completely inadmissible. I object, and I move that counsel be admonished.

"THE COURT: You are asking him to testify from a report something he doesn't know, which is objectionable.

"MR. LARSON: I thought he might have made up the report.

"THE COURT: He said he didn't. Sit down and cool down."

The fatal flaw in plaintiff's position on this issue is that he

claims admission of improper and highly prejudicial testimony *which was never uttered* by the witness. In addition, the court instructed the jury as follows:

"THE COURT: I might tell the jury at this time—I don't know if I have—that whenever testimony is objected to and it's already in and the Court orders it stricken, it means that it is out of the case entirely, and you are to ignore that particular bit of testimony and strike it from your memory insofar as it is possible to do so and not take it into consideration. That is the purpose of it."

This court has made it clear the questioning of police officers as to whether they did or did not issue a traffic citation is generally improper. Dosh v. Elioff, 301 Minn. 169, 222 N. W. 2d 326 (1974). Though the situation in Dosh is not clearly in point, we do feel compelled to hold that it is clearly erroneous to admit into evidence the opinion of an investigating officer as to which party is at fault. However, as plaintiff himself points out, granting a new trial for misconduct of counsel rests *almost wholly within the discretion of the trial court* and its action will not be reversed except for a *clear abuse* of discretion. Reese v. Ross & Ross Auctioneers, Inc. 276 Minn. 67, 149 N. W. 2d 16 (1967). It appears that no such clear abuse exists in the case at bar.

■ The most serious error which occurred and which requires a new trial deals with the failure to have a court reporter present when the jury returned its verdict, and the sending out of that jury to correct the verdict.

Following the final charge to the jury, which included an explanation of the effects of a comparative negligence verdict, the jury retired for deliberations. The record ends here. However, the court recalled during the hearing on plaintiff's post-trial motion that the jury returned a verdict which awarded James Ramfjord, for his medical expenses, *an amount less than the amount stipulated.* The court ordered the jury to retire and cor-

rect this error. The court's recollection of these proceedings is as follows:

"THE COURT: All right. Before we get off that point, *my memory now is a little hazy as to just what took place.* I think I discussed it with you, Mr. Munger, the next day at some length. I don't recall whether the jury came in for further instructions or whether they came in with their Answers.

"MR. MUNGER: My understanding was, your Honor, that they came in with their Answers.

"THE COURT: Came in with their Answers, all right.

"MR. MUNGER: And that you recognized that they had not deducted the damages of the father—or that they had deducted from the total damages of the father.

"THE COURT: Oh, and they went back and corrected it according to what they had told me.

"MR. MUNGER: Correct.

"THE COURT: All right. Now, I think the law is clear that the Court may, on its own initiative, correct an obvious clerical error by bringing it to the attention of the jury, so that before they are dispersed, that they can correct it. To me, this was an obvious clerical error, and the jury so informed me on my questioning, and I merely told them to go back and correct any clerical error they had made. They went in and came back immediately.

"Now, the reason that this was not recorded or reported and put on the record was that, as you know, ordinarily, and from time immemorial, these verdicts have been brought in with no one present in the court room except the Judge. Attorneys by a matter of practice have not been present when the verdict has been brought in unless they have indicated to the clerk that they wanted to be. I don't know whether the attorneys were asked whether they wanted to be here at the time of the verdict or not, but I think it's their duty to inform the clerk that they want to be present at the time the verdict form is brought in.

"Now, ordinarily, prior to our comparative negligence statute, rule, even the Court was never present. There was always an

agreement, unless the Court happened to be here, that they would merely come in and enter their verdict with the clerk, and it would be brought to the attention of the Court in the morning.

"Now, unfortunately, under the new procedure of Answers to Interrogatories and our comparative negligence statute, it seems almost required that the Court be there when they return these Answers because of the very thing that happened here, because of clerical errors that they didn't understand or overlooked, and I, at least, although all judges don't, have felt it necessary because of clerical errors so many times to be here and take it, because once it's left here and the jury is dispersed, there is no way of getting them back to correct it, and we have wasted a whole trial.

"If this had been a request for further instructions or anything more than a correction of a clerical error, I would have then called the reporter, and I would have not only done that, but I would have called the attorneys to get an agreement as to what further instructions they should get, but in this case, it being such an obvious clerical error, it was merely brought to their attention so they could correct it before they disperse and go home. The Court deemed it well within his discretion and, in fact, the proper thing to do to call this to their attention after being assured that it was strictly a clerical error.

"Now, this Court would not feel any sensitivity about preparing and filing an affidavit as to what did take place. I would be glad to do that if this would satisfy you.

"Now, I take it that your contention is that regardless of what really happened, that it is incumbent on the Court to have a reporter here and to record everything, including the return of the Answers. Now, if this is the law, then the Legislature is going to have to change it, because I'm sure it's not the common law, and I know nothing that says there is a requirement that the reporter be present at the time Answers are recorded, and if this is the law, then the Legislature had better change it—or, I mean, if it should be the law, the Legislature better change it.

"Now, just one more point on this: The error that occurred was to the detriment of the plaintiff, the clerical error, and when they corrected it, it redounded to the credit or the advantage of the plaintiff who is now complaining of this procedure, so after all is said and done, it would seem that it is completely non-prejudicial and no cause for complaint inasmuch as it redounded to the advantage of the one who is complaining.

"MR. MUNGER: The point of the situation, your Honor, is this: Under the instructions, if you read the instructions given to the jury by the Court concerning answering the Answers to Interrogatories and regarding damages, there would be absolutely no reason for this jury to have reduced the father's damages and not the daughter's, and it's that point which I am concerned about, that they did in fact do that, and there is no record of whether or not they properly understood that. I don't know what the conversation was.

"THE COURT: All right. I questioned it exactly. Now, I think you know, Harry, that if I file an affidavit as to what happened, you will take my word for it. I know you told me this, so you are not disputing the integrity of the Court, and I can tell you now from my recollection that this very question was asked them, because the Court wanted to be sure that this was not the situation, and they assured the Court that they had done this only in regard to the second item of damages and not the first, so this I was cognizant of. This I questioned.

"Now, I would also welcome and assist in the obtaining of an affidavit by the foreman of that jury as to these facts also—I mean, if this would satisfy you—but I take it that you probably don't dispute these facts as much as you dispute the right you have to have had a record made of this." (Italics supplied.)

The allegations of plaintiff in regard to the above proceedings appear to raise two questions:

(1)   Did the trial court merely order the jury to correct an obvious clerical error?

(2)   Because the proceedings at issue were not transcribed,

may this court in effect accept the recollections of the court, or was the court reporter required to be present in order to avoid any possible doubts as to what actually transpired?

In support of his argument that error occurred, plaintiff cites Cronquist v. City of Minneapolis, 258 Minn. 30, 102 N. W. 2d 512 (1960), and Booth v. Spindler, 261 Minn. 79, 110 N. W. 2d 889 (1961).

Cronquist was a personal injury action. After the jury had retired, the foreman requested a definition of what would constitute contributory negligence. The definition by the court was given only to the foreman of the jury *over the telephone*. The foreman was not in the jury room when this additional instruction was given. He returned to the jury room and relayed the definition of contributory negligence to the other members of the jury. On appeal this court ordered a new trial and stated:

"Under our rules of practice * * * litigants are entitled to have *affirmative* instructions to the jury given in the courtroom with the court reporter present. * * * In the case of an irregularity of such *magnitude* as we have here, prejudice will be presumed." 258 Minn. 32, 102 N. W. 2d 514. (Italics supplied.)

It is noteworthy that this court ordered reversal on the basis of the affidavit of the foreman of the jury. The court did not find the lack of a record *per se* reversible error, but reversed because the error was of such magnitude that prejudice was presumed.

Booth v. Spindler, *supra,* was an action where plaintiff sought rescission of a contract by virtue of an alleged breach of implied warranty of fitness. The case was submitted to the jury in the form of special interrogatories and also general verdicts. The jury returned answers to interrogatories which were inconsistent with the general verdict. In the absence of counsel and the court reporter, the court refused to accept the jury's findings and ordered them to retire and reconcile their findings with the verdicts. On appeal this court stated:

"* * * Whether or not the court's direction to resume delib-

erations is technically a charge to the jury, it is improper for the court to address the jury under such circumstances without the presence of a court reporter, and this is particularly true where counsel are not in the courtroom. The mischief lies in opening the door to a misconstruction and a faulty recollection of what the court actually said, leaving the record uncertain as to the scope of his remarks. Although it was error for the court to proceed in this manner, we do not deem it sufficiently serious to require a new trial. There is no dispute about the tenor of the court's admonition. *He gave no instructions with respect to the substantive rules of law that governed the jury's decision.* The remarks were made in the courtroom, and *when all of the jurors were present.*" 261 Minn. 87, 110 N. W. 2d 894. (Italics supplied.)

The court went on to distinguish the Booth case from Cronquist.

The trial court stated that, in the case at bar, the jury error was strictly mathematical or procedural. In addition, the court stated that the jury was carefully questioned as to whether they had made the same mistake with regard to their award of damages for injuries to Jamie Ramfjord.

An obvious arithmetical error made by a jury in computing the amount due plaintiff must be corrected by the trial court. Barnard-Curtiss Co. v. Minneapolis Dredging Co. 200 Minn. 327, 274 N. W. 229 (1937).

However, this court has consistently held it is error to instruct a jury, or refuse to accept a jury's findings, and order them to retire for further deliberation in the absence of both counsel and a court reporter. In this case we hold it was prejudicial error to do so. When this factor, moreover, is combined with all of the other issues involved in this appeal, we hold that the totality and sum of the individual errors, even though each of them in some cases standing alone might not be prejudicial, denied plaintiff a fair trial.

We hold that under the comparative negligence law whenever a jury requests instructions or the court deems it necessary to send the jury out to correct any interrogatory or verdict for any

reason, any action should be taken with a court reporter present and a record should be made of the entire proceedings. While it would be desirable to have opposing counsel present as well, we deem it unnecessary for counsel to be present if it is clear in the record that each of them has waived his right to be present and has authorized the court to reinstruct and to send a jury out once again after reporting to correct any interrogatory or mathematical error in a verdict. We do hold that it is necessary that a complete record be made of the proceedings.

While there is no indication whatever that the learned trial court in this case did not recite to counsel everything he recalled, the record does indicate that a busy trial judge can forget exactly what transpired. For as the trial court itself stated in this case:

"THE COURT: All right. Before we get off that point, *my memory now is a little hazy* as to just what took place. I think I discussed it with you, Mr. Munger, the next day at some length. I don't recall whether the jury came in for further instructions or whether they came in with their Answers." (Italics supplied.)

We therefore reiterate the language of the Booth case:

"* * * The mischief lies in opening the door to a misconstruction and a faulty recollection of what the court actually said, leaving the record uncertain as to the scope of his remarks." 261 Minn. 87, 110 N. W. 2d 894.

Reversed and remanded for a new trial.

OTIS, JUSTICE (dissenting).
Because I fail to see what prejudice plaintiff suffered, I would affirm.

PETERSON, JUSTICE (dissenting).
I join in the dissenting opinion of Mr. Justice Otis.