Patrice Marie ZIMMERMAN, by Mark Zimmerman, Her Father and Natural Guardian, and Mark Zimmerman, for Himself, Appellants,

v.

WITTE TRANSPORTATION COMPANY, et al., Respondents.

No. 46734.

Supreme Court of Minnesota.

Oct. 14, 1977.

Streater Murphy Brosnahan Langford & Gernander, Roger P. Brosnahan, and Kent A. Gernander, Winona, for appellants.

Brown Bins & Klampe and Frederic N. Brown, Rochester, for respondents.

Heard before TODD, MacLAUGHLIN and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Patrice Zimmerman sustained personal injuries when she fell from her bicycle onto

a public highway where she was struck by a truck owned by Witte Transportation Company. The jury found the driver to be free of negligence but awarded plaintiffs damages. Following a newspaper report that Patrice would not recover any damages for her injuries, two of the jurors approached the trial judge regarding this result. After interviewing the jurors off the record, the trial court denied plaintiffs' motion for a Schwartz hearing. The court also denied a motion for a new trial or judgment notwithstanding the verdict. We affirm.

At the time of the accident, Patrice Zimmerman, then 7 years old, was riding a bicycle from her home to a nearby church to attend summer catechism classes. She was accompanied by her two older sisters, who were then 9 and 10 years old. The highway was a two-lane roadway with a blacktop surface, 24 feet 6 inches wide and divided by a painted centerline. On the east side of the road was a shoulder of crushed rock, pebbles, and dirt extending 4 to 5 feet from the blacktop, and a sloping grassy area extending another 4 to 5 feet. As Patrice and her sisters were riding single file on the right-hand edge of the road surface, with Patrice in the lead, they became aware of a truck overtaking them. They left the road surface to stop on the gravel shoulder. The two older girls stopped their bicycles about 3 to 4 feet from the road surface. Patrice, however, either lost her balance or turned the wheel of her bicycle toward the truck, fell toward the road surface, and was struck by the rear wheels of defendants' truck. She was severely injured.

The case was submitted to the jury on special interrogatories. The jury awarded $100,000 in damages to Patrice and $10,852.90 to her father. However, the jury determined that neither Patrice nor the truck driver was negligent.

After the jury had rendered its verdict, two jurors expressed their belief that in rendering the verdict they assumed Patrice would be entitled to recover damages. Each of these jurors approached the court the day after the trial and informed the court of their assumptions on the issue of damages. Counsel for plaintiffs were contacted by persons who had talked to the jurors and who indicated that the jurors had been confused by the instructions of the court, had misunderstood the effect of their verdict, and had been under the impression that their verdict would entitle plaintiffs to recover from defendants. Plaintiffs' counsel presented the court with an affidavit setting forth the information he had received and requested a Schwartz hearing.[1] The trial court denied the request on the grounds that the situation did not constitute jury misconduct. The court had previously questioned the jurors in the absence of counsel and without making a record. The court told counsel it believed the jurors to be adamant in their opinion that the driver was not negligent.

The following issues are presented for consideration on appeal:

(1) Whether the trial court erred in denying plaintiffs' request for a Schwartz hearing.

(2) Whether the defendant truck driver was negligent as a matter of law.

(3) Whether the trial court erred in its instructions to the jury.

The granting of a Schwartz hearing is generally a matter of discretion for the trial court. Its purpose is to avoid harassment of jurors and to provide a record on appeal in cases where, after the jury renders the verdict, the losing party becomes aware of facts which indicate the possibility of jury misconduct. At the first suspicion of misconduct, the attorney for the losing party should bring the matter to the attention of the trial court. If this procedure is not followed, the issue may not be raised for the first time in a motion for a new trial. *Tupper v. Dirks,* 292 Minn. 445, 193 N.W.2d 800 (1972). Neither an attor-

---

1. This is the proper method of receiving and presenting information to the court with respect to a request for a Schwartz hearing.

ney nor his agent should initiate questioning of jurors concerning possible misconduct. *Olberg v. Minneapolis Gas Co.,* 291 Minn. 334, 343, 191 N.W.2d 418, 424 (1971). It is not improper, however, for an attorney to question jurors who take the initiative by approaching or telephoning the attorney to report facts which they believe constitute misconduct. 291 Minn. 344, 191 N.W.2d 425. If the facts appear to warrant action, the trial court may summon the juror who alleges jury misconduct and permit, with proper safeguards, an examination to be conducted in the presence of counsel for all interested parties and the trial judge. By adhering to this procedure, a record can be preserved for presentation to this court on appeal if any doubt exists about the correctness of the trial court's ruling. *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). Nothing should prevent the trial court from ordering a hearing based upon an oral assertion by counsel or hearsay affidavit. Moreover, trial courts should be liberal in granting such a hearing. *Olberg v. Minneapolis Gas Co.,* 291 Minn. 334, 343, 191 N.W.2d 418, 424.

These procedures were not followed in the instant case by the trial court, and a record was not made in the presence of counsel concerning the statements of the jurors. However, the trial judge did make the following statement in his memorandum accompanying the order denying plaintiffs' motions:

"It appears that at least two of the jurors thought that the verdict they agreed to would entitle plaintiffs to recover. Each of these jurors came to the Court the next day and so stated. *Upon questioning, however, both were adamant that in their opinion the defendant's driver was not negligent.* By virtue of the foregoing plaintiffs now seek a hearing pursuant to *Schwartz v. Minneapolis Suburban Bus Company* [258 Minn. 329], 104 NW2d 301. It does not appear to the Court that that is a case where such a hearing would be appropriate. Schwartz (ibid) involved a case where there was alleged misconduct on the part of a juror.

In that case the Supreme Court said there should be a hearing on that kind of question before the trial judge. In the case at bar, plaintiffs' claim that a Schwartz hearing should be had because the jury was confused and misunderstood the effect of the verdict. That is not a ground for a Schwartz hearing." Citing and quoting from *Nebben v. Kosmalski,* 307 Minn. 211, 239 N.W.2d 234 (1976), as controlling. (Italics supplied.)

Counsel for plaintiffs in his affidavit to support the request for a Schwartz hearing stated in part:

"Since that time the forewoman, and perhaps other jurors, have contacted the court and the county attorney on several occasions concerning their error; *that the jurors have indicated that they thought the truck driver was negligent and would have found him so had they been aware this was necessary in order for the plaintiffs to recover.*" (Italics supplied.)

Obviously, it is desirable to put jurors' statements concerning possible misconduct on the record and this should be done. However, in this case, the trial judge was unequivocal in his recollection of statements made to him by the jurors concerning their opinion that the truck driver was not negligent. This single fact distinguishes the present case from our decision in *Ramfjord v. Sullivan,* 301 Minn. 238, 222 N.W.2d 541 (1974), which involved a situation where, after the jury returned a verdict containing a clerical error, the trial court further instructed the jury without the presence of either attorney and without making a record and then ordered the jury to retire to correct the error. In disapproving of the trial court's examination of jurors concerning possible misconduct, without the presence of the attorneys or without making an appropriate record of the proceedings, we stated (301 Minn. 252, 222 N.W.2d 550):

"While there is no indication whatever that the learned trial court in this case did not recite to counsel everything he recalled, the record does indicate that a

busy trial judge can forget exactly what transpired. For as the trial court itself stated in this case:

" 'THE COURT: All right. Before we get off that point, *my memory now is a little hazy* as to just what took place. I think I discussed it with you, Mr. Munger, the next day at some length. I don't recall whether the jury came in for further instructions or whether they came in with their Answers. (Italics supplied.)'

"We therefore reiterate the language of the Booth case:

" ' * * * The mischief lies in opening the door to a misconstruction and a faulty recollection of what the court actually said, leaving the record uncertain as to the scope of his remarks.' [*Booth v. Spindler,* 261 Minn. 79, 87, 110 N.W.2d 889, 894 (1961).]"

█ In the case at hand, however, the trial judge was not confused, nor was his memory hazy, about exactly what the jurors had related to him on the issue of jury misconduct. In essence, the jurors were seeking to impeach their own verdict. This does not constitute clerical error which can be corrected through a Schwartz hearing. See, *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972); *Weber v. Stokely-Van Camp, Inc.,* 274 Minn. 482, 144 N.W.2d 540 (1966); *Bauer v. Kummer,* 244 Minn. 488, 70 N.W.2d 273 (1955). We thus hold that the trial court did not commit error in denying plaintiffs' motion for a Schwartz hearing. Further, we have reviewed the record of these proceedings and find plaintiffs' remaining allegations of error to be without merit.

Affirmed.

YETKA, Justice (dissenting).

I dissent. I do not believe that trial counsel should be required to rely on a trial judge's recollection of what occurred during the court's discussion with jurors during or subsequent to trial.

Plaintiffs argue the presence of clerical error in the jury's verdict. Generally, after the jury has been discharged, no affidavit of a juror or a third person concerning a

juror's remarks will be received to impeach the verdict where the facts sought to be shown inhere in the verdict itself. E. g., *Weber v. Stokely-Van Camp, Inc.,* 274 Minn. 482, 491, 144 N.W.2d 540, 545 (1966). This includes attempts to show that the jurors misunderstood the evidence, the charge of the court, or the legal consequences of their factual findings. *Bauer v. Kummer,* 244 Minn. 488, 490, 70 N.W.2d 273, 275 (1955); 14 Dunnell, Dig. (3 ed.) § 7109; 66 C.J.S., New Trial § 169. Clerical errors, however, are an exception to this rule. *Bauer v. Kummer,* 244 Minn. 488, 491, 70 N.W.2d 273, 275; *Paul v. Pye,* 135 Minn. 13, 159 N.W. 1070 (1916); 8 Wigmore, Evidence (McNaughton Rev.) § 2355; 66 C.J.S., New Trial, § 169m. The standards for relief from clerical errors are set forth in *Bauer v. Kummer,* 244 Minn. 488, 491, 70 N.W.2d 273, 275:

"There is, however, a so-called exception to the above rule, which is an exception only in appearance since it involves only an impeachment of the paper recording of the verdict and not of the actual verdict to which the jurors had agreed in their deliberations. This exception permits the use of affidavits to show the true verdict for the limited purpose of proving that it was not correctly entered upon the written paper filed with the court. In other words, affidavits of the jurors may be received to show that, by a clerical error of the jury, the verdict returned in court was not the verdict unanimously agreed upon by them.

"A sound public policy demands that a verdict be protected not only from clerical error in its recordation but also from attacks whereby it is sought to vacate, change, or explain the actual verdict on grounds which inhere in the jury room deliberations which led to its rendition. A distinct line must at all times be drawn between an impeachment of the *written record* of the verdict and an attempted impeachment of the verdict itself. Untold mischief would result if the latter were ever permitted. Great caution must therefore be exercised in granting relief

for clerical error lest it become a shield behind which to conceal an attack upon the verdict itself. Whether a motion to change a verdict, or in the alternative to vacate it and grant a new trial, calls merely for relief from clerical error in reducing the verdict to writing, or constitutes an attempt to impeach the verdict itself is primarily a question of fact."

In support of his request for a Schwartz hearing, plaintiffs' attorney supplied the following affidavit:

"R. P. Brosnahan, being first duly sworn on oath, says he is one of the attorneys for the plaintiffs in the above entitled matter and makes the following affidavit in support of plaintiffs' motion for hearing to determine the irregularities in the jury's deliberation and impeachment of the verdict;

"Affiant has not contacted nor spoken directly with any of the jurors or alternate who sat on this case;

"Affiant has been contacted by people who have talked to the jurors and relates the following on information and belief:

"The forewoman of the jury has indicated that she and other members of the jury did not understand the court's instructions with regard to the special verdict and with regard to the element of negligence; that the jury deliberated for some hours and after they had deliberated almost six hours, it being after 10:00 p. m., they were tired and confused as to the instructions; that at several points they requested the court to answer certain questions concerning their deliberations and were advised their questions were too pointed and that they would have to rely on their own recollections; that after six hours of deliberation the court inquired of the jury whether they wished to go home or whether they felt they could reach a verdict that night. The jurors asked for additional time; went back to the jury room, at which point none of the questions on the special verdict had been answered.

"The jurors turned to the questions relating to damages and resolved them quickly and returned to the questions dealing with liability. The jurors were confused in that, having answered the damage questions, they were under the impression that it did not matter how they answered the liability questions;

"The questions were all answered negatively and the jurors returned with a verdict in a very few minutes; that the jurors were under the impression they had awarded a verdict in favor of the plaintiffs in the amount of the damages and that it was only when they read in the paper to the contrary that they learned of their mistake;

"Since that time the forewoman, and perhaps other jurors, have contacted the court and the county attorney on several occasions concerning their error; that the jurors have indicated that they thought the truck driver was negligent and would have found him so had they been aware this was necessary in order for the plaintiffs to recover.

"Further affiant saith not.

R. P. Brosnahan"

Based on the previously enunciated standards, it is apparent that most of the conduct alleged in the affidavit would not constitute grounds to impeach a verdict. For the most part, the allegations concern misunderstandings about the jury instructions and misunderstandings about the legal consequences of their verdict. Neither of these are grounds for impeaching a verdict. The final sentence alleges, however, "that the jurors have indicated that they thought the truck driver was negligent and would have found him so had they been aware this was necessary in order for the plaintiffs to *recover*." This might be interpreted in one of two ways. On the one hand, it might indicate the jury decided the driver was negligent but failed to so indicate on the special verdict form; this would be a clerical error. On the other hand, the same language might be read as indicating the jury decided the driver was not negligent but merely misunderstood the legal consequences of their finding; this would *not* be grounds for impeaching a verdict.

Unfortunately, the trial court did not grant a Schwartz hearing. The trial court did examine two jurors; however, neither of the attorneys was present at the time and no record was made of the proceedings. Instead, the trial court merely denied the motion for the Schwartz hearing along with the other post-trial motions. As a result, there is no record to review the decision on appeal. The trial court appears to have misapprehended the grounds for a Schwartz hearing. One of the purposes of a Schwartz hearing is to provide a forum for review of possible grounds for impeaching the verdict in a manner consistent with judicial safeguards and in so doing, to provide a record on appeal for reviewing the decision. The decision to grant the hearing should not be based solely on whether the affidavit taken alone would justify a decision on the merits. Rather, the decision should be based on whether the allegations of the affidavit raise sufficient justification for further inquiry into possible grounds for impeachment of the verdict. By necessity, this requirement must be liberally construed. I believe that in the instant case the trial court abused its discretion in not permitting the attorneys to be present at the questioning and in not making a verbatim record of the proceedings. It would appear that it was incumbent on the trial court to conduct more than a preliminary, sua sponte inquiry into the substance of the charges.

This court has previously indicated that trial counsel should not be required to rely on a court's recollection of his discussion with the jury. In *Ramfjord v. Sullivan,* 301 Minn. 238, 222 N.W.2d 541 (1974), this court dealt with a situation where the jury returned a verdict containing a clerical error. Without either attorney being present, and without making a record, the trial court further instructed the jury and ordered it to retire to correct its error. We reversed and remanded for a new trial for the reasons set out in the majority opinion.

Therefore, in the situation presented here, it was incumbent on the trial court at least to call in a court reporter to make a record of his conferences with the two jurors so that the attorneys for both parties would have a record on which they could determine the propriety of a motion for a Schwartz hearing.

SCOTT, Justice (dissenting).

I concur with the dissent by Mr. Justice Yetka.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.