## PAUL GROTJOHN v. MAURICE A. McCOLLAR.

191 N. W. (2d) 396.

October 22, 1971—No. 43072.

*Gitis & Lebedoff* and *Jonathan Lebedoff,* for appellant.
*Callaghan & Nelson,* for respondent.

KNUTSON, CHIEF JUSTICE.

Appellant and respondent were competing candidates for the office of sheriff of Stevens County in the November 3, 1970, election. Appellant, Maurice A. McCollar, contestee, received 2,667 votes, and respondent, Paul Grotjohn, contestant, received 1,839 votes. The district court, after trial, found that contestee had violated the election laws and was disqualified from holding office.

In its findings the court found:

"That during the campaign which preceded said election Contestee McCollar represented to persons qualified to vote at the said general election that he had in his possession a written juvenile record [1] of his opponent Grotjohn which record indicated that Grotjohn while a juvenile of the age of thirteen years had been brought before the Juvenile Court of Stevens County charged with breaking and entering into three business places in the City of Morris and further represented that such written record showed that Grotjohn was a burglar; that Contestee intended and did thereby impede and prevent the free exercise of the franchise at such general election and sought and did thereby prevail upon voters to either give or refrain from giving their vote at such election.

"That Contestee McCollar did not have such a written record in his possession; that his statement that he had such a written record is, and was, false.

"That Contestee McCollar constructed a false juvenile record in writing of Contestant Grotjohn which purported record McCollar knowingly published by displaying and reading from, and offering to display and read therefrom to persons eligible to vote at said election; that such constructed record was false and fraudulent; that the said Contestee McCollar by such acts in-

---

[1] Significantly, the court did not find that McCollar represented that he had in his possession a juvenile *court* record.

tended to, and such acts did tend to, affect the voting at such general election."

The statute upon which the contest's determination must rest is Minn. St. 211.08, which, so far as material, reads:

"* * * [A]ny person, firm, corporation or committee who shall knowingly make or publish or cause to be published, any *false statement in relation to any candidate* or proposition to be voted upon, which statement is intended to or tends to affect any voting at any primary or election, shall be guilty of a misdemeanor * * *." (Italics supplied.)

Two jurisdictional questions were raised by contestee in motions to dismiss the contest. One relates to the manner of service upon contestee and the other relates to the failure to designate the county auditor as contestee. We see no merit in either claim nor do we see any useful object in discussing them.

With respect to the claim that contestee violated § 211.08, the most that can be said is that he prepared a typewritten statement containing information showing that contestant, when he was 13 or 14 years of age, had broken into three business places in Morris and was probably placed on probation by the juvenile court. It is claimed that contestee exhibited the typewritten paper he had prepared to several prospective voters and indicated to them that it was a juvenile record showing commission of burglaries by contestant when he was a juvenile. While there is much dispute in the record as to what actually took place, the worst that can be said is that contestee may have misled a few people into believing that he was speaking from a juvenile court record when what he actually had was a typewritten statement prepared by himself from his own knowledge of what had transpired when contestant was a young man.

No one denies that the facts regarding contestant—that he had committed some burglaries when he was a boy—were true. At that time contestee had been a policeman in Morris and it was

general knowledge that these juvenile offenses had been committed.

The law with respect to violation of our corrupt practices statute is stated in Bank v. Egan, 240 Minn. 192, 194, 60 N. W. 2d 257, 259 (1953) as follows:

"The corrupt practices statute is directed against false statements of fact. It does not forbid criticism of a candidate, even though unfair and unjust, if based upon facts which are not false. * * * Acts of the candidate which are not serious or material but which are immaterial and trifling are not grounds for avoiding an election."

See, also, Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127 (1917).

A false representation regarding the source of contestee's information is not a violation of our election laws so long as the information regarding his opponent is true. Here, everyone, including contestant, admitted that the information concerning his past record was true. While it might not be considered admirable conduct, and indeed may seem reprehensible to some, to bring to the public's attention the record of a young man who has since corrected his ways, such action is not prohibited by our election laws as long as the facts stated about the candidate are true.

Contestant not only admitted the truth of the statements, but also wrote a letter to "The Morris Sun" prior to the election, in answer to a letter to the editor by one Fogle, in which contestant said:

"* * * All I can say is thank you to Mr. Louis Amborn, ex-chief of police of Morris, for straightening me out when I was a young boy 13 years of age."

We might add that if contestee had actually been in possession of juvenile court records and had disclosed their contents, he might well be subject to punishment for disclosing such records. Minn. St. 260.161. But the evidence in this case does not bear out

the claim that he actually had juvenile court records in his possession or that he had access to them. The most that can be said is that he prepared a statement of his own which he may have led some people to believe was a juvenile court record. As we have stated above, that misrepresentation, if it occurred, is not a violation of our election laws.

Respondent also claims that there was a violation of Minn. St. 210.06. We have not overlooked that section, but we are of the opinion that it has no application. Section 210.06 proscribes use of, or threats of, coercion to compel a person to vote or refrain from voting. It has nothing to do with corrupt practices as such. Nor does § 210.11. Statutory provisions relating to corrupt practices which will disqualify a person from holding an office to which he is elected are confined to c. 211.

We see no need of extending this discussion. It is clear that in the light of our past decisions construing our corrupt practices statute there was no legal violation of the Fair Campaign Practices Act here, and the decision of the trial court must be reversed.

Reversed.