Ordner T. BUNDLIE, Jr., contestant, Appellant,

v.

David E. CHRISTENSEN, contestee, Respondent.

No. 49671.

Supreme Court of Minnesota.

Feb. 16, 1979.

Brecht, Hedeen & Hughes and William Hedeen, Worthington, for appellant.

Briggs & Morgan and Leonard J. Keyes and Richard Kyle, Jr., St. Paul, for respondent.

SHERAN, Chief Justice.

This is an appeal from an election contest brought over the results of the November 7, 1978, election for county court judge of Pipestone County. The incumbent, Ordner T. Bundlie, was defeated by David E. Christensen, 3001 votes to 2219 votes. Bundlie brought suit under Minn.St. 209.02 subd. 1 to have the election set aside because of illegal and unfair campaign practices. The district court ruled in favor of Christensen, and Bundlie appeals here. We affirm.

The parties are in agreement on the relevant facts. Christensen ran an aggressive campaign. All of his advertisements, any news articles initiated by him or quoting him, and his campaign brochure were considered by the district court and are before us now. The thrust of his campaign can be best summarized by the concluding headline of his brochure: "David E. Christensen Believes That Good Justice Does Not Necessarily Have To Be Expensive." Christensen continually attacked the expenses of the Pipestone County Court, claiming the outlays for bailiffs, court reporters, and legal defense were 680% higher in 1977 than in 1975. He published various statistics indicating that the expenses for bailiffs, court reporters, and legal defense in Pipestone County were higher than in surrounding areas. Christensen nowhere, however, explained to the public that these costs may have been necessary and unavoidable, and certainly not the fault of Bundlie; nor did he discuss the policy reasons behind such expenses. His only theme was that costs now were high, and he would reduce them by less use of reporters and bailiffs.

Appellant Bundlie raises two issues: Did Christensen's campaign literature violate Section 210A.04 subd. 1 of the Minnesota Fair Campaign Practices Act? Do the Code of Judicial Conduct and the Code of Professional Responsibility apply to this case?

1. Minn.St. 209.02 subd. 1 specifies that an election can be contested on the grounds of "deliberate, serious, and materi-

al violations of the provisions of the Minnesota Election Law." The specific provision which Bundlie claims has been violated is Minn.St. 210A.04 subd. 1, which states:

"Every person who writes, prints, posts, or distributes, or causes to be written, printed, posted, or distributed, except by broadcasting, any circular, poster, or other written or printed matter containing false information with respect to the personal or political character or acts of any candidate, which is designed or tends to elect, injure or defeat any candidate for nomination or election to a public office, shall be guilty of a gross misdemeanor."

The heart of this section is its prohibition of "false information." This particular section was enacted in 1975 and has not been specifically construed by this court. But its predecessor, Minn.St. 211.08 of the Corrupt Practices Act, which prohibited "false statements" in campaign literature, has been considered previously by the court. In *Hawley v. Wallace,* 137 Minn. 183, 186, 163 N.W. 127, 128 (1917) the court established a narrow definition of "false statements":

"The statute is directed against false statements relative to facts. It is not intended to prevent criticism of candidates for office nor to prevent deductions and arguments from their official conduct unfavorable to them. It does not reach criticism which is merely unfair or unjust. It does reach false statements of specific facts."

The court followed this reasoning in *Bank v. Egan,* 240 Minn. 192, 194, 60 N.W.2d 257, 259 (1953):

"The corrupt practices statute is directed against false statements of fact. It does not forbid criticism of a candidate, even though unfair and unjust, if based upon facts which are not false. *Hawley v. Wallace, supra.*"

This interpretation of the statute is dispositive of the first issue, for Bundlie makes no real claim that any of Christensen's statements were factually inaccurate. The statements told only one side of the story; they were very probably "unfair" and "unjust," but they were not untrue.

There is one exception to Bundlie's lack of specific untruths. At the trial, the district judge directly asked Bundlie if anything Christensen ever said was false. Bundlie specified that Christensen's claim that only four counties in the Fifth Judicial District had full-time court reporters was wrong. There is some question about this fact. It appears that two counties share a full-time reporter, so there are actually five full-time court reporters. But Christensen may still be technically correct in saying only four counties have full-time reporters. In any case, this ambiguous statement would not appear to qualify under the 209.-02 subd. 1 standard of "deliberate, serious, and material."

2. It is Appellant Bundlie's next contention that even if 210A.04 has not been violated, the election should be set aside because Christensen has violated Canon 7B of the Code of Judicial Conduct and DR8–103 of the Code of Professional Responsibility. The text of these canons is set out in the margin.[1]

---

1. "B. *Campaign Conduct.*

"(1) A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

"(a) should maintain the dignity appropriate to judicial office, and should encourage members of his family to adhere to the same standards of political conduct that apply to him;

"(b) should prohibit public officials or employees subject to his direction or control from doing for him what he is prohibited from doing under this Canon; and except to the extent authorized under subsection B(2), or B(3), he should not allow any other person to do for him what he is prohibited from doing under this Canon;

"(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact.

"(2) A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates should not himself solicit or accept campaign funds, or solicit publicly stated support, but he

The role of these ethical canons in an election contest is somewhat unsettled. It is our conclusion that a violation of these canons is not of itself grounds for setting aside an election. Minn.St. 209.02 subd. 1 specifies the setting aside of elections for violations of "Minnesota election law." It is unlikely that by that phrase the legislature meant to include the rules established by this court in fulfillment of its responsibility for the regulation of the legal profession and the supervision of the judiciary. The more reasonable interpretation is that the phrase is limited to those statutes specifically enacted by the legislature to control the campaign and election process itself. In *Grotjohn v. McCollar,* 291 Minn. 344, 191 N.W.2d 396 (1971) this court ruled that only violations of Minn.St. 211, then the Fair Campaign Practices Act, were grounds for an election contest. In 1975 Chapter 211 was replaced by the current Chapter 210A, thus compelling our conclusion that it is only violations of statutory election law and not the Code of Judicial Conduct and Code of Professional Responsibility which may support an election contest.

By no means does this imply that these codes play no role in the conduct of judicial elections or in our review of such contests, however. First of all, members of the profession are required to abide by these standards by professional obligation, not to mention the possibility of discipline eventually administered by this court. And second, the interpretations by this court of the language of the specific prohibitions of Chapter 210A are of necessity informed and influenced by the existence of these ethical canons. The prohibition of section 210A.04 of false information, in this election contest,

is a case in point. "False information" of necessity has a different meaning where an incumbent judge is prevented by judicial ethics from raising money to respond effectively to half-truths and directly justifying his position on legal issues and prior decisions from the bench than does the same phrase have in campaigns involving contestants not similarly restricted. There may be other provisions in Chapter 210A which must also be interpreted more stringently when applied to judicial elections. The integrity and effectiveness of the judiciary depend in no small measure on the public trust and confidence which campaigns for judicial office can do much to foster if conducted in a high minded fashion, but will only damage otherwise. We are unwilling to see judicial elections deteriorate into unproductive squabbling and hereby reserve the right to interpret election law in this differential manner.

The instant case does not fall within the scope of the campaign prohibitions even when expanded in view of the ethical codes. Incumbent Bundlie was able to discuss and publicize his rebuttal to the charges made. The district court noted that even if the ethical codes applied directly, they were not violated. We see no reason to hold otherwise.

Affirmed.

---

may establish committees of responsible persons to secure and manage the expenditure of funds for his campaign and to obtain public statements of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers. A candidate should not use or permit the use of campaign contributions for the private benefit of himself or members of his family.

"(3) An incumbent judge who is a candidate for retention in or re-election to office without a competing candidate, and whose candidacy has drawn active opposition, may campaign in response thereto and may obtain publicly stated support and campaign funds in the manner provided in subsection B(2)."

"DR8–103. Lawyer Candidate for Judicial Office

"(A) A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Canon 7 of the Code of Judicial Conduct."