In the Matter of the Election of R. Douglas (Doug) RYAN to the Anoka County Commission, 5th District, in the General Election of November 4, 1980.

William V. MENKEVICH, Francis Fogerty, Joseph D. Moriarty, Marilyn M. Buchman and Jerome Petron, Respondents,

v.

Charles LEFEBVRE, Anoka County Auditor, Contestee,

R. Douglas (Doug) Ryan, Appellant.

No. 52068.

Supreme Court of Minnesota.

Feb. 27, 1981.

McGovern, Opperman & Paquin and Vance K. Opperman, Minneapolis, for appellant.

Steffen, Munstenteiger, Bearse, Beens, Parta & Peterson and Richard Beens, Anoka, for Menkevich et al.

Robert W. Johnson, Sr., County Atty., Anoka, for Lefebvre.

SHERAN, Chief Justice.

This is an election contest under Minn. Stat. §§ 209.01–.12 (1980) in which the contestants allege that appellant R. Douglas Ryan made a false claim of party support, within the meaning of Minn.Stat. § 210A.02 (1980), in his campaign to be elected to the Anoka County Commission. After a hearing, acting District Court Judge Glen W. Swenson ruled that appellant had violated section 210A.02; that the violation was serious, deliberate, and material; that Minn. Stat. § 210A.38 (1980) would not prevent forfeiture of office; and that the Anoka County Auditor should revoke appellant's certificate of election.

Appellant has been an active member of the DFL party for a number of years. He was elected secretary of the 47th Senatorial District DFL in 1974, 1976, 1978, and 1980, councilman-at-large, city of Coon Rapids in 1974, 1976, and 1978, and was defeated in the 1977 mayoral election in Coon Rapids. Last fall appellant decided to run for Anoka County fifth district commissioner. The position carries no party designation on the ballot. Moreover, appellant admitted neither seeking nor receiving endorsement from the DFL party. After finishing first in the September primary election, appellant defeated his challenger in the general election by 299 votes out of 15,047 cast.

The basis of the complaint in the present case is a claim that appellant's campaign materials implied party endorsement or support in violation of Minnesota law.[1] Three pieces of campaign literature are in issue. The first is a flyer that was prepared in August, 1980. Approximately 12,000 copies were printed and distributed door-to-door throughout the fifth Anoka County commission district[2] during the primary and general election campaigns. At the bottom of the brochure in green capital block letters it states "DFL" and "LABOR ENDORSED." Between "DFL" and "LABOR ENDORSED," in small black lettering, it says

"District 5
Secretary
47 Sen. Dist."

The black lettering makes reference to a DFL party office actually held by appellant in the 47th senate district.

About 10,000 copies of a second flyer were prepared in October, 1980 and nearly all of them were distributed door-to-door. The design of this piece of literature is the same, except that between "DFL" and "LABOR ENDORSED" it states in small green lettering

"Secretary
47 Sen. Dist."

Finally, appellant distributed over 1,000 lawn signs throughout the district. The lawn signs resembled the second brochure, except that the word "ENDORSED" is the same size as

"SECRETARY
47 SEN. DIST."[3]

Only capital letters were used at the bottom of the lawn signs, but "DFL" and "LABOR" are in the largest typeface.

Several issues are raised on appeal:

1. Minn.Stat. § 210A.02 (1980) states:

No person or candidate shall knowingly, either by himself or by any other person, while such candidate is seeking a nomination or election, make, directly or indirectly, a false claim stating or implying that the candidate has the support or endorsement of any political party, or unit thereof, or of any organization, when in fact the candidate does not have such support or endorsement.

2. This district consists of 12 precincts in appellant's home town of Coon Rapids and three precincts in neighboring Blaine.

3. Appellant also rented a billboard for a thirty-day period. This billboard was of similar design and was placed at one of the busier intersections in Coon Rapids.

(1) Is a certificate of election for the office of county commissioner valid pending the outcome of a contest challenging the election?

(2) Did appellant's campaign literature falsely claim or imply that he had the support or endorsement of the DFL party?

(3) Was appellant's conduct knowing and was it a deliberate, serious, and material violation of the Minnesota election law?

(4) Should appellant's conduct be excused under Minn.Stat. § 210A.38 (1980)?

1. After the notice of appeal was filed in this case, a controversy arose whether appellant could take his seat pending our decision since a certificate of election had issued. Following an en banc hearing, we ruled, on January 7, 1981, that the certificate of election was invalid.

■ Minn.Stat. § 204A.54, subd. 1 (1980) authorizes the auditor of each county to issue election certificates. Subdivision 2 of the section limits this power by stating that "[i]n case of a contest, the certificate may not be issued until the proper court has determined the contest. *This subdivision shall not apply to candidates elected to the office of state senator or representative.*" *Id.* § 204A.54, subd. 2 (emphasis added). The above-quoted language indicates that only in the case of legislative election contests may a certificate of election issue before judicial resolution of the matter. Appellant argues, however, that section 204A.54, subd. 1 and language in Minn.Stat. § 209.07 (1980) grant county auditors the option to issue election certificates when a seat is being contested. Moreover, appellant asserts that the right of the district court to revoke an election certificate lapses when a notice of appeal is filed.

■ We are not persuaded by the arguments of appellant. The statutes evince a legislative intent that contests involving legislative seats be treated differently than other election contests. This is consistent with the principle that "[e]ach house shall

be the judge of the election returns and eligibility of its own members." Minn. Const. art. IV, § 6. Accordingly, we hold that Minn.Stat. § 204A.54, subd. 2 (1980) is controlling. When an election is contested, no certificate of election may issue until the contest is finally determined in court, except in the case of candidates elected to the Minnesota legislature.

■ 2. We now reach the merits of the appeal.[4] In this state, election contests are tried as civil actions under the rules governing civil actions. *See Schmitt v. McLaughlin,* 275 N.W.2d 587, 590 (Minn. 1979). When an election contest is appealed to the supreme court, "findings of fact of the trial court are entitled to the same weight as in any civil action and will not be reversed where the requisite support is found in the record." *Bank v. Egan,* 240 Minn. 192, 194, 60 N.W.2d 257, 259 (1953). Although the findings of the trial court may not be set aside unless clearly erroneous, Minn.R.Civ.P. 52.01, we are not bound by the trial court's interpretation of documentary evidence if we believe an error has been made. *See* In re Trust Known as Great Northern Iron Ore Properties, 308 Minn. 221, 243 N.W.2d 302, *cert. denied, Arms v. Watson,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

To determine whether appellant falsely claimed or implied party support or endorsement, we need to consider our recent decision in *Schmitt v. McLaughlin,* 275 N.W.2d 587 (Minn.1979). *Schmitt* involved a contested election in which an individual running for a non-party designated office used the letters "DFL" in his campaign literature. The court held that the material "would imply to the average voter that contestee had the endorsement or, at the very least, the support of the DFL party." *Id.* at 591. The court added that "[t]o hold otherwise would render the word 'imply' meaningless." *Id.* Finally, the court observed that candidates have a right to in-

---

**4.** Respondent filed a motion for summary affirmance in this matter. By operation of this opinion, the motion is denied.

form voters of their party affiliation "by *the use of such words* as 'member of' or 'affiliated with' in conjunction with the initials 'DFL.'" *Id.* (emphasis added).

Appellant argues that his placement of the words

"Secretary
47 Sen. Dist."

between "DFL" and "ENDORSED" constituted words such as "member" or "affiliated with" under *Schmitt.* Appellant testified that he was familiar with Minn.Stat. § 210A.02 (1980) and the *Schmitt* case. In addition, he observed that similar charges had been previously filed against him by the same political opponents so he had been careful not to give them "anything to go on." Finally, appellant stated that the use of his party office on the literature was intended to modify "DFL" as an indication of party affiliation and not as an endorsement.

■ The district court held that the words of qualification "most reasonably read as an appositive rather than a modifier." We agree with the trial court's analysis of the documentary evidence before it. The format used by appellant was such that voters are encouraged to ignore the words of modification. By placing "DFL" and "LABOR ENDORSED" on the same line in much larger type, the average voter most likely will overlook any words limiting "DFL." Line placement and type size take on added significance in light of evidence that candidates with actual party endorsement commonly use the form "DFL/LABOR ENDORSED" in their literature.

■ Even assuming that appellant used a uniform type size, the modifying words are not words such as "member of" or "affiliated with." To meet the test established in *Schmitt,* it follows that the modifying language should be either synonymous with or a paraphrase of the approved words. Appellant's statement of party office goes beyond mere words of party affiliation. They could be viewed as words indicating official party support. For this reason, the words chosen by appellant cannot be considered synonymous with the words approved by

the *Schmitt* court. Further, a simple reading of the literature clearly indicates that the words are not a paraphrase of "member of" or "affiliated with." Thus, the district court was justified in its interpretation of appellant's literature.

The district court also concluded from the testimony of several witnesses that the campaign literature would imply to the average voter that appellant was supported or endorsed by the DFL party. Contestants' witness testified that she was not active politically and regularly voted a straight DFL ticket. She assumed from appellant's literature that he was "endorsed by the Democratic party." Appellant's witnesses, all but one of whom had a significant connection to local politics, testified that the material was not confusing. Testimony from one of appellant's witnesses is of great interest. The witness, who was unfamiliar with appellant and was not politically active, prepared political ads for placement in a program for a high school theatrical production. Ads that were accepted had to be edited to fit space limitations. Without the authorization of appellant, the witness made "cosmetic" changes in one of appellant's flyers, leaving in what was perceived to be the meaning of the original. The edited copy was identical to the wording used by endorsed candidates: "DFL/LABOR ENDORSED." As we stated in *Schmitt*:

> Given such campaign advertising by endorsed candidates, contestant's use of the initials "DFL" would imply to the average voter that contestee had the endorsement or, at the very least, the support of the DFL party. To hold otherwise would render the word "imply" meaningless. Such a result could not have been intended by the Legislature.

275 N.W.2d at 591. In view of the *Schmitt* decision and our consideration of the record in this case, we cannot say that the district court's findings were clearly erroneous.

■ 3. The provisions of the election law at issue herein require the analysis of two intent-related elements. A violation of section 210A.02 must be "knowingly" com-

mitted. However, an election may be invalidated due to a violation of section 210A.02 only if it was a "*deliberate,* serious, and material" violation. Minn.Stat. § 209.02, subd. 1 (1980) (emphasis added).

There is no question that under the standard established in *Schmitt* that appellant's violation, if knowing, was deliberate, serious, and material within the meaning of Minn.Stat. § 209.02, subd. 1 (1980). The violation was deliberate because appellant admitted preparing the campaign materials "to affect the voting at the election." 275 N.W.2d at 591. The action was serious because it was "one that is not trivial." *Id.* Appellant's 22,000 flyers, his billboard, and his 1,000 lawn signs constituted a far greater saturation of the district than the 75 lawn signs and daily newspaper advertising present in the *Schmitt* case. *Schmitt* also indicated that violation of section 210A.02 is inherently material. Therefore, if the statute is violated, the violation will be considered material. *Id.*

■ The important determination to make, then, is whether appellant's false implication of party support was made knowingly. "Knowingly" could be interpreted to have a definition identical with "deliberate." We decline to do this, however, in order to give full effect to all of the statutory language. Minn.Stat. § 645.16 (1980). In *Bank v. Egan*, 240 Minn. 192, 60 N.W.2d 257 (1953), the court construed a fair campaign practices provision that prohibited a person from "knowingly [making] any false statement in relation to any candidate or proposition to be voted upon." *Id.* at 194, 60 N.W.2d at 258. The court held that "the correct interpretation of the statute requires us to hold that the word 'knowingly' refers to the falsity of the statement and that, to find a violation of the statute, it must be determined that the violator knew that the statement published was false." *Id.* at 195, 60 N.W.2d at 259. We are guided by this definition. Appellant may be said to have violated section 210A.02 "knowingly" if he knew that his literature

falsely claimed or implied that he had party support or endorsement.

■ Appellant argues that he did not intend to violate the statute and that he made a conscious effort to comply with the law. Most important, appellant acknowledged his familiarity with both the statute and the *Schmitt* case. His testimony must be examined together with the circumstances surrounding the preparation of the campaign literature. He is an experienced party regular who has run in a number of elections. This experience undoubtedly caused him to become familiar with the type of literature used by endorsed candidates. Added to appellant's background is the fact that he ruled out using the precise modifying language authorized by the *Schmitt* court. In so doing, appellant necessarily and consciously took the risk that his interpretation of the law was not correct. Although appellant may argue that he took steps to comply with the law, his choice of wording and format does not evidence a decision to avoid the possibility of a violation or to reduce the likelihood of confusion among voters. As Justice Holmes once observed:

> It may be assumed that he intended not to break the law but only to get as near to the line as he could, which he had a right to do, but if the conduct described crossed the line, the fact that he desired to keep within it will not help him.

*Horning v. District of Columbia*, 254 U.S. 135, 137, 41 S.Ct. 53, 65 L.Ed. 185 (1920).

When appellant chose the design for his literature, he did so based upon his own interpretation of the bounds of the law. Appellant cannot now ask this court to alter the course of that boundary to comport with the risk he took in drawing his own line.

■ 4. A decision that appellant violated the election law does not automatically result in the loss of office. Minn.Stat. § 210A.38 (1980)[5] lists the circumstances

---

**5.** This section provides as follows:

> When upon the trial of any action or proceedings under the provisions of sections

under which this court may find that it is unjust to invoke the penalty of removal. Looking at the factors listed in the statute, it is clear from the nature of appellant's violation that it did not arise from an accidental miscalculation or from some other reasonable cause. Nor was the violation trivial. The election was decided by less than a 2% margin, in what expert testimony indicated was a strong DFL district, during a year in which DFL candidates were running successfully in Minnesota.

Much more difficult to determine is whether appellant's violation did not arise from any want of good faith. Although we found that the statute had been violated in *Schmitt*, we held that "where it appears that contestee's conduct did not arise from any lack of good faith, it would be unjust to require him to forfeit his office." 275 N.W.2d at 592. Thus, *Schmitt* makes it clear that a knowing violation of the statute does not necessarily preclude application of section 210A.38.

Here, appellant did not use wording such as that approved in the *Schmitt* case. Instead, appellant placed language of his own choosing in a confusing format. On the other hand, appellant insisted that he was familiar with the statute and the *Schmitt* case and that he used this knowledge when attempting to comply with the law. Appellant's testimony was corroborated by his printer. The printer testified that an early version of a flyer was set up to state "DFL/LABOR ENDORSED." Upon appellant's advice, the printer placed the flyer in the form that it finally took. In addition, the *Schmitt* case did not anticipate the potential confusion that varying type sizes in campaign literature could cause.

In view of appellant's testimony and the record as a whole, the silence of the *Schmitt* opinion on one of the issues in the instant case, and the burden of proof in this civil action, we reverse the district court's decision that appellant acted in bad faith. Our reluctance to set aside elections in marginal situations moves us to accept appellant's claim of good faith although his interpretation of the *Schmitt* case was erroneous. After today's opinion, however, candidates who seek elected office should understand more clearly the limits of section 210A.02. Accordingly, candidates will have a most difficult time claiming good faith under section 210A.38 if violations similar to those presently under consideration occur hereafter.

Reversed.

210A.01 to 210A.44, it shall appear from the evidence that the offense complained of was not committed by the candidate, or with his knowledge or consent, or was committed without his sanction or connivance, and that all reasonable means were taken by such candidate at such election, or were taken by or on behalf of the candidate, or that the offenses complained of were trivial or unimportant, and that in all respects his candidacy and election were free from all offensive or illegal acts, or that any act or omission of any candidate complained of arose from accidental miscalculation or from some other reasonable cause of like nature, and in any case did not arise from any want of good faith, and under the circumstances it seems to the court to be unjust that the candidate shall forfeit his nomination, position or office, then the nomination or election of such candidate shall not by reason of such offense complained to be void, nor shall the candidate be removed from nor deprived of his nomination, position, or office.