Michael O. BURNS, Appellant,

v.

John E. VALEN, Respondent.

No. C8–86–2172.

Court of Appeals of Minnesota.

Jan. 29, 1987.

Michael O. Burns, St. Cloud, pro se.

Gordon Rosenmeier, Peter Vogel, Little Falls, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and STONE *, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court judgment dismissing appellant's election contest with prejudice. Appellant claims the trial court erred because (1) an election contest may be based on violation of the Code of Judicial Conduct and (2) respondent violated the Minnesota Fair Campaign Practices Act, Minn.Stat. ch. 210A (1986). We affirm.

## FACTS

After each party survived a primary election, respondent John E. Valen defeated appellant Michael O. Burns in the November 4, 1986 general election for district court judge in the seventh judicial district. The victory margin was several thousand votes.

Alleging violation of the Minnesota Fair Campaign Practices Act, Minn.Stat. ch. 210A (1986), and the Code of Judicial Conduct, appellant filed a notice of election contest. Appellant challenges based on three incidents occurring prior to election day.

First, two employees of the Morrison County court administrator's office voluntarily obtained and displayed respondent's campaign literature on their desks at the administrator's office prior to the primary election. Appellant observed the literature on the day prior to the primary. The materials were removed shortly after the primary. Appellant asserts this incident violated Minn.Stat. §§ 210A.081, .02 and canon 7(B)(1)(b) of the Code of Judicial Conduct.

Second, on October 24, 1986, respondent attended a fund raising event in Little Falls on behalf of Congressional candidate Collin Peterson. Respondent was introduced to the gathering as a candidate for judicial office. Appellant claims this appearance violated Code of Judicial Conduct canon 7(A)(1)(c).

Third, respondent's volunteer election committee placed a paid political advertisement in the *St. Cloud Visitor*, the official newspaper of the St. Cloud Roman Catholic diocese. Appellant objects to two paragraphs in that letter written by a co-chairman of the election committee:

I write this specific paragraph as a personal friend of Valen's and not as co-chairman of his campaign. As a judicial candidate, John cannot take a stand on an issue such as abortion. The Canons of Judicial Conduct prohibit him from doing so. However, I know John's views after many hours of discussions with him over the past eleven years. The suggestion was recently made that John is "pro-abortion". Nothing is further from the truth. John believes wholly in sanctity of human life and that all life should be

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

preserved. John is not "pro-abortion" and never was.

\* \* \* \* \* \*

The Seventh District Bar Association conducted a "straw ballot" of its members approximately three weeks past. This type of ballot is held as a public service by the Bar Association in order to show the voters who the lawyers and judges in the District support. The lawyers and the judges in the Seventh District have worked with Valen and Burns for all the years that they have been practicing and are in a unique position to compare the two candidates in the areas of courtroom ability, professional standards and demeanor. *Over 76% of the judges and lawyers in the Seventh District voted to support John Valen.*

Appellant's challenge of the "pro-abortion" paragraph is based on violation of canon 7(B)(1)(c) of the Code of Judicial Conduct. His contest regarding the bar association paragraph is based on violation of Minn.Stat. §§ 210A.02, .04 concerning false statements. Only 278 of 448 ballots were returned. Of the 278 responding members, 212 or 76% voted for respondent. In actuality, only 47% of all the associations' members voted for respondent.

On December 11, 1986, the trial court's judgment was entered dismissing appellant's contest with prejudice. The trial court concluded judicial code violations do not constitute violations of Minnesota election law and appellant did not establish violation of Minn.Stat. ch. 210A. Appeal is made from the December 11 judgment and this court expedited briefing and oral arguments.

## ISSUES

1. Can a judicial election be set aside solely on the basis of judicial code violations?

2. Did the trial court err in dismissing appellant's contest based on alleged violations of Minn.Stat. ch. 210A?

## ANALYSIS

1. Appellant claims respondent's violations of the Code of Judicial Conduct were so flagrant and intentional that they, independent of any violation of the Minnesota Fair Campaign Practices Act, Minn.Stat. ch. 210A, justify overturning the November 4, 1986 general election.

The Minnesota Supreme Court addressed this issue in *Bundlie v. Christensen,* 276 N.W.2d 69 (Minn.1979). The court stated:

The role of these ethical canons in an election contest is somewhat unsettled. *It is our conclusion that a violation of these canons is not of itself grounds for setting aside an election.* Minn.St. 209.02 subd. 1 specifies the setting aside of elections for violations of "Minnesota election law." It is unlikely that by that phrase the legislature meant to include the rules established by this court in fulfillment of its responsibility for the regulation of the legal profession and the supervision of the judiciary. The more reasonable interpretation is that the phrase is limited to those statutes specifically enacted by the legislature to control the campaign and election process itself. In *Grotjohn v. McCollar,* 291 Minn. 344, 191 N.W.2d 396 (1971) this court ruled that only violations of Minn.St. 211, then the Fair Campaign Practices Act, were grounds for an election contest. In 1975 Chapter 211 was replaced by the current Chapter 210A, thus compelling our conclusion that *it is only violations of statutory election law and not the Code of Judicial Conduct and Code of Professional Responsibility which may support an election contest.*

*Id.* at 72 (emphasis added). The court explained the role of the judicial code in interpreting violations of Minn.Stat. ch. 210A.

By no means does this imply that these codes play no role in the conduct of judicial elections or in our review of such contests, however. First of all, members of the profession are required to abide by these standards by professional obligation, not to mention the possibility of discipline eventually administered by this

court. And second, the interpretations by this court of the language of the specific prohibitions of Chapter 210A are of necessity informed and influenced by the existence of these ethical canons.

*Id.*

While appellant offers various interpretations of *Bundlie* resulting in consideration of judicial code violations to support an election contest, that case expressly states a contest may be based only on violations of statutory election law. The judicial code is to be used only to interpret statutory language. We therefore review only appellant's allegations based on violation of Minn.Stat. ch. 210A.

2. Appellant claims respondent violated Minn.Stat. ch. 210A by publishing the October 30 paid political advertisement and permitting employees of the court administrator's office to display his campaign literature at their desks.

In reviewing this matter we are limited to consideration of the trial court's findings and conclusions.

Although the findings of the trial court may not be set aside unless clearly erroneous, Minn.R.Civ.P. 52.01, we are not bound by the trial court's interpretation of documentary evidence if we believe an error has been made.

*In re Election of Ryan,* 303 N.W.2d 462, 465 (Minn.1981).

### a. *Political Advertisement.*

Appellant asserts respondent violated Minn.Stat. §§ 210A.02, .04 (1986) when publishing the paragraph in the *St. Cloud Visitor* regarding the seventh district bar association's straw vote. While respondent argues violation of section 210A.02 was not raised before the trial court, a memorandum filed by appellant with the trial court cites to that section.

The statutes state:

No person or candidate shall knowingly, either personally or by any other person, while such candidate is seeking a nomination or election, make, directly or indirectly, a false claim stating or implying that the candidate has the support or endorsement of any major political party, or unit thereof, or of any organization, when in fact the candidate does not have such support or endorsement.

Minn.Stat. § 210A.02 (1986).

Every person who intentionally participates in the preparation or dissemination of paid political advertising or campaign material with respect to the personal or political character or acts of any candidate, which is known by that person to be false and which is designed or tends to elect, injure or defeat any candidate for nomination or election to a public office, is guilty of a gross misdemeanor.

*Id.* § 210A.04, subd. 1. Upon reviewing the record, we find no evidence supporting appellant's allegation regarding a claim of false endorsement.

To violate either section 210A.02 or 210A.04, respondent must have disseminated a statement known by him to be false. *See In re Election of Ryan,* 303 N.W.2d at 467 (interpreting section 210A.02); Minn. Stat. § 210A.04 ("known by that person to be false").

Appellant claims the statement that over 76% of the seventh district bar association members voted to support respondent was technically untrue. Only 76% of those voting supported him. Appellant also asserts no indication exists that any judge voted in the poll because of its anonymous nature and therefore that statement of support is also false. Yet that sentence read in the context of the entire paragraph was not shown to be falsely misleading. The sentence merely reflects the poll's result and does not constitute violation of Minn. Stat. §§ 210A.02, .04 (1986).

### b. *Campaign Literature.*

Appellant claims respondent as Morrison County Attorney violated Minn.Stat. § 210A.081 when he permitted his campaign literature to be displayed at the Morrison County Courthouse. That statute states:

*No* officer, agent, clerk, or *employee of any political subdivision shall, directly or indirectly, during hours of employment* solicit or receive funds *or at any time use authority or official influence to compel any* officer or *employee in the classified service* to apply for membership in or become a member of any organization, or to pay or promise to pay any assessment, subscription, or contribution, or *to take part in any political activity.*

Minn.Stat. § 210A.081 (1986) (emphasis added).

Appellant asserts the two court administrator employees compelled the attention of other employees to influence them to vote for respondent. The trial court found the two employees displaying the literature were unclassified civil service employees and:

No person coerced, compelled or attempted to coerce or compel any employee of the Morrison County court administrator's office to participate in any campaign activities concerning the Burns/Valen judicial election.

Even if consideration of the judicial code would cause a broad reading of "compel" as found in the statute, the word cannot be read broad enough to encompass appellant's definition. The trial court did not erroneously find lack of compulsion.

Appellant also claims violation of Minn. Stat. § 210A.02 with respect to the campaign literature but he failed to raise that argument before the trial court, prohibiting our consideration on appeal. *See Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

### DECISION

The trial court did not erroneously find and conclude appellant failed to establish violations by respondent of Minn.Stat. ch. 210A (1986). A certificate of election shall be issued to respondent.

Affirmed.