## REPUBLICAN PARTY OF MINNESOTA, et al., Plaintiffs,

v.

## Verna KELLY, in her capacity as Chairperson of the Minnesota Board of Judicial Standards, et al., Defendants.

### No. 98–831(MJD).

United States District Court, D. Minnesota.

March 9, 1998.

Tony P. Trimble, Erick G. Kaardal, Matthew W. Hoopjala, Trimble & Associates for Plaintiffs.

Richard S. Slowes, Asst. Solicitor Gen., for Defendant Verna Kelly in her capacity as Chairperson of the Minnesota Board of Judicial Standards.

Thomas C. Vasaly, Asst. Atty. Gen., for Defendants Gregory M. Bistram, in his capacity as Chair of the Minnesota Lawyers Professional Responsibility Board or his successor and Edward J. Cleary, in his capacity as Director of the Minnesota Office of Lawyers Professional Responsibility, or his successor.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Plaintiffs move for an order pursuant to Rules 65(a) and 65(b) of the Federal Rules of Civil Procedure, enjoining the Minnesota Lawyers Professional Responsibility Board, the Minnesota Office of Lawyers Responsibility and the Minnesota Board of Judicial Stan-

dards from enforcing sections of Canon 5 of the Code of Judicial Conduct (the "Judicial Codes") which prohibit judicial candidates from exercising their rights of free speech and free association guaranteed under the First Amendment.

*Background*

1. The Plaintiffs

Plaintiff Gregory F. Wersal ("Wersal") is an attorney licensed to practice law within the state of Minnesota. In 1996, he was a judicial candidate for the position of Associate Justice of the Minnesota Supreme Court. Wersal states that he will also seek this position in 1998. Wersal's campaign committee, Campaign for Justice is also a named party in the present action before the Court. Also named as plaintiffs are Cheryl L. Wersal, wife of Greg Wersal, and Mark Wersal, Greg Wersal's brother. Corwin C. Hulbert is also a named plaintiff, as an unsolicited advocate of Wersal and his endorsement by the Republican Party and its Affiliated Associations, also named plaintiffs.

Plaintiffs state that during his 1996 campaign, the Campaign for Justice, as well as Wersal's wife, brother and members of the Republican party or an Affiliated Association, engaged or participated in one or more of the following types of speech or association on Wersal' behalf: attended gatherings of the Republican party and its affiliated associations and distributed campaign literature and spoke at such gatherings; announced that Wersal was in favor of a strict construction of the Constitution and was critical of certain decisions of the Minnesota Supreme Court; identified Wersal as a member of the Republican party; sought the Republican party's endorsement for Wersal; and solicited campaign contributions.

Also during Wersal's 1996 campaign, an individual filed a Complaint with the Minnesota Office of Lawyers Professional Responsibility ("MOLPR") against Wersal, alleging violations of Canon 5 of the Judicial Codes. The Complaint was investigated and dismissed by the MOLPR.

On December 23, 1997, the Minnesota Supreme Court amended sections of Canon 5 of the Judicial Codes. Plaintiffs argue that as a result of these amendments, Wersal and others on acting on his behalf, are prevented from engaging in the type of conduct described above, such as attending gatherings of the Republican party or its affiliated associations.

2. History of Canon 5 of the Judicial Codes

The Judicial Codes have included provisions regulating the conduct of judicial candidates in judicial elections since at least 1974. 52 M.S.A., Code of Judicial Conduct (1993). In the earlier version of the Judicial Codes, Canon 7 directed that judicial candidates should not do the following: make speeches for a political organization, Canon 7(A)(1)(b) (1993), solicit funds or make contributions to political organizations, or attend political gatherings, Canon 7(A)(1)(c), or engage in any other political activity except on behalf of measures to improve the law, the legal system, judicial administration or the administration of justice. Canon 7(A)(4). Canon 7 also directed that judicial candidates should maintain the dignity appropriate to judicial office and should encourage family, and employees or public officials subject to the candidate's control from doing what the candidate could not do. Canon 7(B)(1)(a) and (b) (1993). Also in the previous version of the Codes, judicial candidates were directed not to make pledges or to "announce his or her views on disputed legal or political issues" Canon 7(B)(c) (1993).

In 1995, the Judicial Codes addressing the regulation of judicial candidates were amended and are now addressed in Canon 5. Canon 5 was again amended on December 23, 1997, by adding language to clarify ambiguities that resulted from the 1995 amendments. The Sections of Canon 5 relevant to this motion, in its present form, is provided below, with the December 1997 amendments underscored:

A. In General.

*Each justice of the supreme court and each court of appeals and district court judge is deemed to hold a separate nonpartisan office. MS 204B.06, Subd. 6.*

(1) Except as authorized in Section 5B(1), a judge or a candidate for election to judicial office shall not:

(a) (a) act as a leader or hold any office in a political organization; *identify themselves as members of a political organization; except as necessary to vote in an election;*

(b) publicly endorse or, except for the judge or candidate's opponent, publicly oppose another candidate for public office;

(c) make speeches on behalf of a political organization;

(d) attend political gatherings; *or seek, accept or use endorsements from a political organization;* or

(e) solicit funds for or pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions.

\* \* \* \* \* \*

(3) A candidate for a judicial office, including an incumbent judge:

(a) shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and independence of the judiciary, and shall encourage family members to adhere to the same standards of political conduct in support of the candidate as apply to the candidate;

(b) shall prohibit employees who serve at the pleasure of the candidate, and shall discourage other employees and officials subject to the candidate's direction and control from doing on the candidates behalf what the candidate is prohibited from doing under the Sections of this Canon;

(c) except as otherwise permitted by Section 5B(2), shall not authorize or knowingly permit any other person to do for the candidate what the candidate is prohibited from doing under the Sections of this Canon;

(d) shall not:

(*l*) make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his or her views on disputed legal or political issues; or misrepresent his or her identity, qualifications, present position or other fact, or those of the opponent;

\* \* \* \* \* \*

B. (1) A judge or a candidate for election to judicial office may, except as prohibited by law,

(a) speak to gatherings, *other than political organization gatherings,* on his or her own behalf;

\* \* \* \* \* \*

(2) A candidate shall not personally solicit or accept campaign contributions or solicit publicly stated support. A candidate may, however, establish committees to conduct campaigns for the candidate through media advertisements, brochures, mailings, candidate forums and other means not prohibited by law. Such committees may solicit and accept campaign contributions, manage the expenditure of funds for the candidate's campaign and obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting and accepting campaign contributions and public support from lawyers, *but shall not seek, accept or use political organization endorsements.* Such committees shall not disclose to the candidate the identity of campaign contributors *nor shall the committee disclose to the candidate the identity of those who were solicited for contribution or stated public support and refused such solicitation.* A candidate shall not use or permit the use of campaign contributions for the private benefits of the candidate or others.

\* \* \* \* \* \*

D. *Political Organization. For purposes of Canon 5 the term political organization denotes a political party organization.*

\* \* \* \* \* \*

**3. Plaintiffs' Claims**

In their Complaint, Plaintiffs have asserted five separate claims. In Count One, Plaintiffs allege that the prohibitions against

judicial candidates, their families and others acting on the candidate's behalf, from attending and speaking at political gatherings, *See* Canon 5A(1) and B(1), infringes upon their rights to freedom of speech and association, as guaranteed them under the United States and Minnesota Constitutions. Complaint ¶ 35. Plaintiffs also allege that this prohibition violates the equal protection clauses of the United States and Minnesota Constitutions, as the Judicial Codes' definition of political organization affects political organizations such as the Republican Party, but no "special interest" organizations such as political action committees, the Minnesota Trial Lawyers Association or MADD. *Id.* ¶ 40. In Count II, Plaintiffs allege that the ban on judicial candidates from announcing their views on disputed legal or political issues, *See* Canon 5A(3), violates the individual plaintiffs' freedom of speech. *Id.* ¶¶ 42 and 61. Counts III and IV, assert claims involving the violation of the rights of freedom of speech, freedom of association and equal protection, as a result of the Judicial Codes ban on judicial candidates identifying their political party, *See,* Canon 5A(1), *Id.* ¶ 62 and the ban on seeking, accepting or using political party endorsements, *See,* Canon 5A(1) and B(2). *Id.* ¶ 79. The last count, Count V, asserts the Judicial Codes' ban on judicial candidates personally soliciting campaign contributions, *See,* Canon 5B(2), is a violation of the right to freedom of speech. *Id.* ¶ 102.

### 4. Motion for Temporary Restraining Order and/or Preliminary Injunction

On March 3, 1998, precinct caucuses will be held throughout the state of Minnesota. Plaintiffs seek the above-referenced injunctive relief in order to fully exercise their constitutional rights of freedom of speech and freedom of association, without the threat of sanctions against Wersal at meetings of the Republican Party, including the precinct caucuses, the April 1998 Basic Political Organizational United Conventions, the May 1998 Congressional District Conventions and the June 1998 State Convention, as well as meetings of the affiliated associations.

### Standards for Injunctive Relief

The Eighth Circuit has established that the following factors are to be used when considering a motion for preliminary injunctive relief:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981); *accord Medtronic, Inc. v. Gibbons,* 527 F.Supp. 1085, 1090 (D.Minn.1981), *aff'd,* 684 F.2d 565 (8th Cir.1982).

### 1. Success on the merits

In their Complaint, the Plaintiffs present the Court with several claims involving the infringement of their fundamental rights to freedom of speech, freedom of association and equal protection under the law. In order to obtain the injunctive relief they seek, Plaintiffs must establish that the relevant sections of Canon 5 of the Judicial Codes are not narrowly tailored to serve a compelling state interest. *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,* 944 F.2d 137, 141–142 (3rd Cir.1991).[1] In response to the allegations of Plaintiffs, the Defendants respond that the state of Minnesota has a compelling state interest in maintaining the independence and impartiality of the judiciary, and that the Judicial Codes are narrowly tailored to serve such interest.

In its limited opportunity to review the applicable case law, the Court finds that the state of Minnesota does have a compelling interest in maintaining the independence and impartiality of the judiciary. *See, e.g. Morial v. Judiciary Comm'n of Lousiana,* 565 F.2d 295, 302 (5th Cir.1977). In order to reach a determination on the merits of the

---

**1.** The Defendants assert that other standards may be applicable to the constitutional challenges presented by Plaintiffs in their Complaint.

For the purposes of this motion, however, the Defendants will not dispute that the strict scrutiny standard is applicable.

claims presented, this Court must reconcile the conflicts between the constitutionally guaranteed rights at issue in this case and the compelling interests of the state in regulating judicial elections. *Buckley v. Illinois,* 997 F.2d 224, 227 (7th Cir.1993).

> Candidates for public office should be free to express their views on all matters of interest to the electorate. Judges should decide cases in accordance with law rather than with any express or implied commitments that they may have made to their campaign supporters or to others. The roots of both principles lie deep in our constitutional heritage. Justice under law is as fundamental a part of the Western political tradition as democratic self-government and is historically more deeply rooted, having been essentially uncontested within the mainstream of the tradition since at least Cicero's time. Whatever their respective pedigrees, only a fanatic would suppose that one of the principles should give way completely to the other—that the principle of freedom of speech should be held to entitle a candidate for judicial office to promise to vote for one side or another in a particular case or class of cases or that the principle of impartial legal justice should be held to prevent a candidate for such office from furnishing any information or opinion to the electorate beyond his name, rank and serial number.

*Id.*

Because the conflicting interests involved in this case are of great import, the Court will hesitantly address the likelihood the Plaintiffs will succeed on the merits of their claims, given the limited time frame in which the Court was asked to decide Plaintiffs' motion.

In support of their claim that the "announce" rule contained in Canon 5A(3)(d)(*l*) infringes upon their right to freedom of speech, Plaintiffs note that three courts have already held similar language unconstitutionally overbroad and vague. *See, Buckley, supra; Beshear v. Butt et al.,* 863 F.Supp. 913 (E.D.Ark.1994); *American Civil Liberties Union of Florida v. The Florida Bar,* 744 F.Supp. 1094 (N.D.Fla.1990). The Defen-

dants point out, however, that at least one court has held similar language constitutional. *Stretton,* 944 F.2d at 144. Defendants also argue that the announce rule does not prohibit judicial candidates from discussing or stating their views as to matters relating to judicial organization and administration, or to other issues involving the character of candidates, their background and experience. *Bundlie v. Christensen,* 276 N.W.2d 69, 72 (Minn.1979). Thus, contrary to the finding of the court in *Buckley,* the Judicial Codes do not prevent candidates from discussing more than their name, rank and serial number.

The Court has reviewed the law cited by the parties in their briefs, and *at this time,* finds that those cases holding the "announce" rule unconstitutionally overbroad are more persuasive. Thus, Plaintiffs have established a likelihood of success on the merits as to Count Two.

The case law is not so clear with regard to the remaining Counts in the Complaint which involve the prohibitions against political activity by judicial candidates. Plaintiffs have not presented the Court with any cases that directly support their position on these remaining counts. Rather, in reviewing the relevant sections of Canon 5, the Court finds such sections appear to be narrowly tailored to serve the compelling state interest of maintaining the independence and impartiality of the judiciary. At this time, the Court thus finds that Plaintiffs have not established a likelihood of success on the merits as to Counts I, III, IV and V.

### 2. Irreparable Harm

The Defendants concede that an infringement of constitutional rights would constitute irreparable harm. *See,* Memorandum of Defendant Verna Kelly, page 4, n. 2. The Defendants argue, however, that the harm suffered by not allowing Plaintiffs to attend caucuses on March 3, 1998 would be slight in comparison to the harm to the public interest. The Court will thus proceed to the next factor, balance of hardships.

### 3. Balance of Hardships

In their brief, and in the arguments of counsel, Plaintiffs assert that the claims at

issue in this case arose as a result of the December 23, 1997 amendments to Canon 5. For the most part, this is simply not the case. In fact, the only substantive changes that resulted from the December 1997 amendments were the addition of prohibitions against judicial candidates from identifying themselves as a member of a political party, and the prohibition against seeking, accepting or using a political party's endorsement. The prohibitions against attending and speaking at political gatherings, announcing views on disputed legal or political issues, and personally soliciting funds have been in place for a number of years. Given this fact, the Court finds that the balance of harm weighs against granting Plaintiffs' motion for injunctive relief.

The Defendants have established that the state has a compelling interest in maintaining an independent and impartial judiciary. The relief sought will upset and derail the status quo as to such compelling state interests. As noted above, Plaintiffs have failed to establish a likelihood of success on the merits as to their claims, with the exception of the claim involving the announce rule. By granting the relief sought, no backup rules exist which would protect the state's compelling interests. With no regulations in place, judicial candidates will be given the opportunity to essentially turn the non-partisan judicial election process into a partisan one. Once that happens, the effects are irreversible. On the other hand, by maintaining the status quo and protecting the state's interest in maintaining a non-partisan judicial process for such time as is necessary to allow the Court to carefully consider the issues before it, the harm to the Plaintiffs is minimal as there are many more opportunities for them to receive political endorsements than just the March 3, 1998 caucuses.

4. Public Interest

For the reasons stated above, this factor also weighs against granting the injunctive relief sought, given the state's compelling interest in maintaining an independent and impartial judiciary.

IT IS HEREBY ORDERED that Plaintiffs' Motion for a Temporary Restraining Order and/or for Preliminary Injunctive Relief is DENIED.